DONNA M. HANSON v. I. D. S. PROPERTIES
MANAGEMENT COMPANY AND ANOTHER.

242 N. W. 2d 833.

May 21,1976—No. 45926.

*Michael R. Fargione,* Legal Aid Society of Minneapolis, for relator.

*Dorsey, Marquart, Windhorst, West & Halladay* and *Emery W. Bartle,* for respondent employer.

*Warren Spannaus,* Attorney General, *Peter W. Sipkins,* Solicitor General, *Peter C. Andrews,* Assistant Attorney General, and *Frank W. Levin,* Special Assistant Attorney General, for respondent commissioner.

Heard before Sheran, C. J., and Otis, Kelly, MacLaughlin, and Scott, JJ., and considered and decided by the court en banc.

KELLY, JUSTICE.

Writ of certiorari to review a decision of the commissioner of employment services denying unemployment compensation to relator-employee. We reverse.

Pursuant to a collective bargaining agreement and as a condition of her employment, employee was required to join and remain in good standing with the union. The union and the employer had entered into agreements prior to employee's term of employment providing as follows:

(a) Employer would deduct union initiation fees and monthly dues from paychecks on receipt of a signed authorization from the employee;

(b) Employer would deduct only *current* fees—"Any * * * overpayment or nonpayment will be handled by the union independent of the dues check-off procedure."

(c) Union would hold employer harmless "against any and all claims, demands, suits or other forms of liability that shall arise out of or by reason of action taken or not taken by the Employer in the reliance upon the authorization furnished to the Employer by the Union or for the purpose of complying with the provisions of this memorandum."

Employee began work on February 13, 1974, and on March 27, 1974, executed an "AUTHORIZATION for CHECK-OFF of UNION DUES and AFFILIATION FEES," which allowed paycheck deduction of "all dues, initiation fees and other legal fees" which might be due the union. Employer never withheld the $20 union initiation fee from employee's wages and admits that this was its mistake.

Employee worked for approximately 7 months without paying the initiation fee. She testified that she was aware that the fee was due, but she had been assured by her supervisor when asking about the fee that it would be withheld from her wages. A union stewardess approached employee *for the first time* regarding the fee on or about September 19, 1974, a Wednesday. The stewardess demanded payment and employee asked that the fee be withheld from her wages that Friday, stating that she did not

have the money available in the middle of the week. The stewardess replied that this could not be done. Employee testified that she had the $20 available on Friday, but the stewardess did not contact her at work. On Monday, September 24, employee was again contacted by the stewardess who demanded the fee. Employee, who had six children and was separated from her husband, replied that she did not then have the money available. The same day, September 24, the union sent a letter to employer reporting that employee was not in good standing and employer terminated her immediately. She applied for unemployment benefits, which the commissioner denied.

Under Minn. St. 268.09, subd. 1(1), on which the commissioner relied in denying benefits, an employee is disqualified from receiving unemployment compensation if the employment relationship is terminated "voluntarily *and* without good cause attributable to the employer." (Italics supplied.) We hold that there was good cause attributable to the employer, and therefore reverse without reaching other legal issues raised by the parties.

Uncontradicted evidence in the instant case establishes that the employer mistakenly failed to withhold the union initiation fee from employee's wages, and that its own supervisor later assured the employee that the fee would be withheld. Further uncontradicted evidence establishes that the fee was in arrears for 7 months before the employee was given a first notice to pay by the union, and that termination by the employer followed only 5 days after that notice, on the same day the union demanded termination. In addition to demonstrating gross unfairness to the employee, this evidence certainly establishes that the employer's conduct was a good and substantial cause of the termination. Termination was the natural, probable, and foreseeable result of the employer's failure to withhold the fee. The disqualification statute does not require that *all* causal factors in a termination flow from the employer, but that termination be wholly

"without good cause attributable to the employer." [1] In view of the character of the employer's involvement in this termination, that requirement has not been met.

The commissioner of employment services based his decision denying unemployment compensation on Bergseth v. Zinsmaster Baking Co. 252 Minn. 63, 89 N. W. 2d 172 (1958), and, by implication, on Anson v. Fisher Amusement Corp. 254 Minn. 93, 93 N. W. 2d 815' (1958). In Bergseth we held that a forced retirement at age 65 was deemed to be "voluntary" within the meaning of that concept in Minn. St. 268.09, subd. 1(1), when it was mandated by the contract between the union and the employer. In Anson we denied benefits to a projectionist at a theater when a union member with seniority "bumped" him and took his job. We found that an act which would be deemed voluntary if performed by an individual employee would also be deemed voluntary "when performed indirectly through a third party acting as the employee's agent." 254 Minn. 98, 93 N. W. 2d 819.

Counsel for the employee illustrated well at oral argument a principal problem with Anson. The statutory scheme underlying unemployment compensation tends to force an individual to sign a union contract to take an available job, then denies him benefits when he is "bumped" on the theory that he voluntarily consented to termination. There may be similar difficulties with the presumption of voluntariness in Bergseth, although there may have been an unarticulated reason for the holding there, i. e., a retiring employee, who is probably covered by a private or public retirement plan, or both, ought not be permitted to exact a

---

[1] Our case law also holds that negligence or wrongful conduct on the part of the employer is not necessary to establish good cause attributable to him. Fannon v. Federal Cartridge Corp. 219 Minn. 306, 18 N. W. 2d 249 (1945). A substantial wage reduction can constitute "good cause." Scott v. The Photo Center, Inc. 306 Minn. 535, 235 N. ;W. 2d 616 (1975). Given this state of the law, we fail to see how admittedly negligent conduct proximately resulting in termination can be anything but "good cause."

426

second recovery for his unemployment from a system designed primarily to deal with other kinds of unemployment problems.

The employer and employee here assert that Bergseth and Anson are not applicable in this case, and we agree with those assertions. The commissioner of employment services considers Bergseth to be controlling and requests us to overrule it and related cases. While there may be reasons for questioning these decisions, we decline to distinguish or overrule them in the context of the instant case. Since we have held that the disqualification here was erroneous in any event because this employee's termination was with good cause attributable to the employer, we need not reach any issue of voluntariness under Minn. St. 268.09, subd. 1(1). Reaching this issue would plunge us unnecessarily into a premature resolution of potentially difficult legal questions. If this issue is as important to the commissioner as counsel suggests, we are confident that another case will present it in a more appropriate posture for our decision.

For the reasons set forth above, the order of the commissioner denying benefits must be reversed and the case remanded.

Reversed and remanded.