**Sylvester B. HELMIN, Relator,**

v.

**GRISWOLD RIBBON & TYPEWRITER, Respondent,**

and

**Commissioner of Economic Security, Respondent.**

No. C9-83-1582.

Court of Appeals of Minnesota.

Feb. 29, 1984.

Gerald W. Von Korff Rinke, Noonan, Grote & Smoley, Ltd., Sauk Rapids, for relator.

James H. Leviton, Minneapolis, Peter C. Andrews, Asst. Atty. Gen., St. Paul, for Commissioner of Economic Security.

Heard, considered and decided by POPOVICH, C.J., and FOLEY and SEDGWICK, JJ.

## OPINION

POPOVICH, Chief Judge.

Certiorari was granted to review the decision of the commissioner's representative affirming the appeal tribunal determination that the employee voluntarily terminated his employment without good cause attributable to his employer. The employer (a) failed to provide continuous health insurance coverage from January to April 1983, as promised and provided over the 16 previous years; (b) failed to timely notify claimant that the group policy had been cancelled by the insurance company, foreclosing the statutory conversion privilege; (c) continued withholding $21 a week for three months from claimant's paycheck for insurance when no insurance was provided. The claimant argues "good cause attributable to the employer" for termination of em-

ployment. We agree with claimant and reverse the decision of the commissioner's representative.

## FACTS

Sylvester Helmin was employed by Griswold Ribbon and Typewriter as an office machine repairer from August 1, 1962 to April 8, 1983. Joseph Halik, Jr. is the sole proprietor. In 1966, Griswold promised and provided its three employees with a hospitalization health insurance plan. Griswold agreed to pay ⅔ of the policy premiums carried by Bankers Life of Des Moines, Iowa. The balance was deducted from the employees' weekly paychecks.

On January 18, 1983, the employer was notified by Bankers that the policy was cancelled on January 14th for nonpayment of premium. The employer testified that he mailed two checks to the company on December 31st and one on January 12th. Bankers received one of the December checks and credited the January check on January 25th, which covered premiums through January 14th.

In February, after Bankers advised the employer that it had not received all the checks, the employer contacted the insurance commissioner. On March 24, the insurance commissioner sent the employer several letters from Bankers which indicated it would not reinstate the policy until proof of payment was received.

From January 14 through March 18, the employer continued to deduct $21 per week from Helmin's paycheck for insurance coverage. Although the employer knew Helmin and his family had continuous serious health problems, he did not inform Helmin that his family had no insurance coverage during this period or that Griswold was having a dispute with Bankers.

On March 25th or 28th, the employer put a copy of Bankers' notice of cancellation on each employee's workbench. Until then, Helmin did not know that his family no longer had health insurance. The employer told his three employees that since he no longer needed the insurance because he

was covered by Medicare, the employees could find their own insurance and he would help them pay a portion of the premiums. He did not offer to reimburse them for amounts withheld from their checks, offer to procure another group policy, or offer to pursue the Bankers' cancellation.

Helmin called Bankers to verify the cancellation and was told he should have received a written notice from his employer indicating he could elect to continue his insurance coverage within 30 days after the policy was cancelled (the conversion privilege). See Minn.Stat. § 62E.16 (1982). Since more than 30 days had already passed, (Jan. 14—March 25), Bankers told Helmin he could not continue his family's coverage.

On March 30, Helmin asked his employer for the insurance money that was wrongfully withheld from his paychecks and for his two weeks' vacation pay so that he could attempt to purchase his own health insurance. The employer told Helmin that he didn't have $189 to pay him for the withheld amount but that he would give him one week's vacation pay. Helmin resigned from his employment on April 11, 1983 and applied for unemployment compensation benefits.

The claims deputy denied Helmin benefits. The appeal tribunal concluded that since it was not the employer's fault the insurance policy was cancelled and Helmin had difficulty finding other coverage, his termination from employment was not for good cause attributable to the employer. The commissioner's representative affirmed this decision even though he recognized "the employer acted wrongfully in failing to immediately inform the claimant of cancellation of his insurance, and by continuing to deduct premiums from his paycheck," because this conduct was not "sufficiently outrageous so as to constitute 'good cause attributable to the employer.'"

## ISSUE

Whether an employer's failure to timely notify an employee of the cancellation of his health insurance so that he may exercise the statutory conversion privilege provided in Minn.Stat. § 62E.16, together with the employer's withholding of insurance contributions from employee's paycheck during the period when no insurance was provided, constituted "good cause" for claimant's termination of employment and were reasons attributable to the employer?

## ANALYSIS

■ Minn.Stat. § 268.09, subd. 1(1) (1982) provides that an individual is disqualified from receiving unemployment compensation benefits when "[t]he individual voluntarily and without good cause attributable to the employer discontinued his employment with such employer." This disqualification provision is to be narrowly construed. Smith v. Employers' Overload Co., 314 N.W.2d 220, 222 (Minn.1981).

■ In reviewing the decision of the commissioner's representative, this court must determine "whether the commissioner's findings are reasonably sustained by the evidence, are affected by an error of law, or are arbitrary and capricious." Salamon v. Time Share Computer Systems, Inc., 341 N.W.2d 300, 302 (Minn.App.1983). In reviewing the legal conclusion of the commissioner's representative, this court is free to exercise its independent judgment. See Smith v. Employers' Overload Co., 314 N.W.2d at 221.

### 1. "Good Cause":

■ The decision of the commissioner's representative rests on his conclusion that the employer did not act intentionally or in an outrageous manner in failing to inform the claimant of the cancellation of his health coverage and withholding insurance contributions from employee paychecks. The representative improperly applied the legal reasoning of "misconduct" cases which require an employee to act in more than a negligent manner. Under the "good cause" section of the disqualification provisions of the unemployment compensation law, the standard does not require a find-

ing that the *employer* was negligent or acted wrongfully. *See Hanson v. I.D.S. Properties Management Co.*, 308 Minn. 422, 242 N.W.2d 833, 835 n. 1 (1976); *Fannon v. Federal Cartridge Corp.*, 219 Minn. 306, 18 N.W.2d 249, 252 (1945).

█ Claimant only needs to establish that he discontinued his employment for some good cause attributable to his employer. *See Marz v. Department of Employment Services*, 256 N.W.2d 287, 289 (Minn.1977); *Zepp v. Arthur Treacher Fish & Chips, Inc.*, 272 N.W.2d 262, 263 (Minn.1978). " 'Good cause attributable to the employer' embraces situations where employees, through no fault of their own, leave their employment due to factors or circumstances directly connected therewith." *Hessler v. American Television & Radio Co.*, 258 Minn. 541, 557, 104 N.W.2d 876, 887 (1960).

█ Helmin resigned for two reasons: (1) when the employer's group health insurance policy was cancelled, he was not notified until more than 30 days had elapsed and was unable to continue the policy under the statutory conversion privilege; and (2) his employer withheld $21 a week from his paycheck from January 14 to March 18 for insurance coverage he did not receive, which was not returned to him when he asked for it on March 30th.

The few jurisdictions which have dealt with this type of good cause issue have consistently held that an employee has good cause attributable to the employer to resign his employment when the employer has reduced benefits or breached the employment contract. For example, the refusal of an employer to continue to reimburse an employee for living expenses when he was away, represented a sufficient change in conditions of employment to warrant voluntary leaving with sufficient cause connected with the employment. *Amendola v. Administrator*, 1B Unemploy.Ins.Rep. (CCH) ¶ 1975.575 (Conn. Super.Ct. Fairfield Co. Jan. 18, 1949). The failure to pay claimant for a day of sick leave according to the employer's policy presented just cause for terminating employment. *White v. BUC*, 1B Unemploy. Ins.Rep. (CCH) ¶ 1975.595 (Ohio Ct. of Com.Pls. Athens Co. Jan. 22, 1975). Finally, a claimant who was not furnished gas and oil for his truck as previously agreed with the employer, left for good cause without fault attributable to the employer. *Hercules v. Int'l Mill Service*, 1B Unemploy.Ins.Rep. (CCH) ¶ 1975.78 (W.Va. 13th Jud.Cir. Feb. 7, 1974).

The Minnesota case of *Hanson v. I.D.S. Properties Management Co., supra*, supports the conclusion of other jurisdictions that an employer's breach of the employment contract constitutes "good cause." In *Hanson*, the Minnesota Supreme Court held that the employee terminated her employment for good cause attributable to the employer when the employee lost her job because the employer failed to withhold a union initiation fee from her paycheck as it had promised. Helmin argues the acts of his employer "seriously prejudiced the employee, and are reprehensible to say the least. As it was, the acts of the employer prevented employee from availing himself of the 30 day conversion provision. * * * The consequences could have been far worse [than in *Hanson* ]. Had employee incurred substantial medical bills during this period, they would have been uncovered."

Griswold defends its actions by stating that it contacted the insurance commissioner and the insurance company in an effort to get the policy reinstated. When the policy was not reinstated, it notified all employees and offered to pay a portion of their premiums when they obtained their own insurance.

The actions of Griswold do not excuse it from notifying all employees of the cancellation of the insurance policy in order that they could exercise their statutory conversion privileges within the 30 day period following cancellation. Minn.Stat. § 62E.16 (1982) provides:

> *Every program of self insurance, policy of group accident and health insurance* or contract of coverage by a health

maintenance organization written or renewed in this state, *shall include*, in addition to the provisions required by section 62A.17, *the right to convert to an individual coverage qualified plan without the addition of underwriting restrictions* if the individual insured leaves the group regardless of the reason for leaving the group, or upon cancellation or termination of the coverage for the group except where uninterrupted and continuous group coverage is otherwise provided to the group. *The person may exercise his right to conversion within 30 days of leaving the group or within 30 days* following his receipt of due notice of cancellation or termination of coverage of the group and upon payment of premiums from the date of termination or cancellation. Due notice of cancellation or termination of coverage for a group shall be provided to each employee having coverage in the group by the insurer, self insurer or health maintenance organization cancelling or terminating the coverage except where reasonable evidence indicates that uninterrupted and continuous group coverage is otherwise provided to the group. Every employer having a policy of group accident and health insurance, group subscriber or contract of coverage by a health maintenance organization shall, upon request, provide the insurer or health maintenance organization a list of the names and addresses of covered employees. Plans of health coverage shall also include a provision which, upon the death of the individual in whose name the contract was issued, permits every other individual then covered under the contract to elect, within the period specified in the contract, to continue his coverage under the same or a different contract without the addition of underwriting restrictions until he would have ceased to have been entitled to coverage had the individual in whose name the contract was issued lived. An individual conversion contract issued by a health maintenance organization shall not be deemed to be an individual enrollment contract for the purposes of section 62D.10.

(Emphasis added.)

We agree with the claimant that the employer's failure to notify him of the cancellation of the company's health insurance policy within the statutory conversion period while continuing to withhold insurance contributions from his paycheck, gave claimant good cause to resign his employment. The employer's actions were reprehensible. Griswold stopped providing promised health insurance coverage and withheld cancellation information from an employee who it knew had serious family health problems. Prompt notice during the statutory conversion period would have enabled the employee to continue necessary health insurance coverage. In addition, the employer withheld contributions for a nonexistent policy from claimant's paycheck—amounts it failed to return to claimant when requested.

## 2. *"Attributable to the Employer"*:

▄ The commissioner's representative decided that the termination of claimant's employment was not "attributable to the employer" because it was the insurance company's fault—not the employer's—that the insurance policy was cancelled.

Whether the employer was "at fault" or acted reasonably is not relevant in determining if claimant's reasons for resigning are "attributable to the employer." *See Hanson*, 242 N.W.2d at 835 n. 1. The issue is whether claimant's reasons for terminating his employment were *connected with* his employment. The general rule is stated by the Iowa Supreme Court as follows:

[T]he sole test of whether an employee escapes disqualification because of quitting his job is whether he left for a sufficient cause *connected with his employment.*

*Wolf's v. Iowa Employment Security Commission*, 244 Iowa 999, 59 N.W.2d 216, 219 (1953) (emphasis added) (quoting 81 C.J.S., Social Security and Public Welfare § 167).

The Minnesota Supreme Court applied this rule in *Fannon v. Federal Cartridge Corp., supra,* stating:

> [W]e feel the legislature intended that, *where factors or circumstances directly connected with employment* result in illness or disease to an employee and make it impossible for him to continue therein because of serious danger to his health, termination * * * may correctly be said to be involuntary and for 'good cause attributable to the employer,' even though the employer be free from all negligence or wrongdoing in connection therewith.

*Id.* 18 N.W.2d at 252 (emphasis added).

Here, the claimant's termination of his job because of his employer's failure to provide him with the promised insurance coverage, the subsequent wrongful withholding of insurance contributions from his paycheck, and the failure to timely notify him of the policy cancellation, are all factors connected with claimant's employment. Claimant therefore established that his termination was "attributable to the employer."

## DECISION

We reverse the decision of the commissioner's representative and hold that claimant voluntarily terminated his employment for good cause attributable to the employer. He is thus qualified to receive unemployment compensation benefits under Minn.Stat. § 268.09, subd. 1(1) (1982).

Reversed.