Mark A. RUTTEN, Relator,

v.

ROCKIE INTERNATIONAL, INC., Respondent,

Commissioner of Economic Security, Respondent.

No. C5–84–133.

Court of Appeals of Minnesota.

June 5, 1984.

Donald C. Hanson, Alexandria, for relator.

Frederick L. Grunke, St. Cloud, for Rockie Intern., Inc.

Hubert H. Humphrey, III, Atty. Gen., Paul N. Heckt, Sp. Asst. Atty. Gen., St. Paul, for respondent Com'r of Economic Sec.

Considered and decided by POPOVICH, C.J., and FORSBERG and RANDALL, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

In this economic security case, relator sought certiorari to review the decision of the Commissioner's representative that relator was disqualified from receiving unemployment benefits because he had discontinued his employment voluntarily and without good cause attributable to his employer. A claims deputy had made the initial determination of disqualification, that determination was affirmed by the Department Appeals Tribunal and affirmed by the Commissioner's representative. Relator concedes he voluntarily terminated his employment, but argues that he did so with good cause attributable to his employer. We affirm.

## FACTS

Relator was employed by respondent Rockie International in October, 1982, to sell advertising for brochures which Rockie distributed in grocery stores and elsewhere. Relator was employed on a straight commission basis and was to be paid $85.00 for each ad sold and printed.

In January, 1983, after relator had failed to sell any ads, he suggested a new advertising program involving coupons printed in brochures and redeemable at distributing stores. Rockie agreed the program had merit and to run it on an experimental basis. To help relator start the program, Rockie agreed to pay relator a $300 weekly advance against his commissions. There was no agreement that this $300 advance would be considered straight salary, nor, apparently, was there any *written* agreement stating that the $300 was a draw against commissions. Several of the $300

checks had the notation "draw" or "adv. comm." written on them. Despite this, relator claims the checks were intended to be salary.

After about fourteen weeks of the new program, Rockie decided to put the program on hold, and asked relator to travel to Morris, Minnesota, to sell the regular brochure. Such sales were to be on the same terms as relator worked under before the experimental program was begun—that is, on straight commission, with no weekly draw against commissions.

Relator did not travel to Morris, but did not inform Rockie he was quitting. Rockie did not know relator had discontinued his employment until it was notified by the unemployment office that relator had filed a claim for unemployment benefits.

### ISSUE

Does the record support the determination of the Commissioner that relator voluntarily discontinued his employment without good cause attributable to the employer?

### ANALYSIS

In reviewing Economic Security cases, our scope of review is limited and well defined.

> The narrow standard of review requires that findings be reviewed in the light most favorable to the decision, and if there is evidence reasonably tending to sustain them, they will not be disturbed.

*White v. Metropolitan Medical Center,* 332 N.W.2d 25, 26 (Minn.1983); *see also Group Health Plan, Inc. v. Lopez,* 341 N.W.2d 294, 296 (Minn.App.1984); *Mastley v. Commissioner of Economic Security,* 347 N.W.2d 515, 518 (Minn.App.1984).

■ An individual is disqualified from receiving unemployment benefits if the individual voluntarily and without good cause attributable to the employer, discontinues his employment. Minn.Stat. § 268.09, subd. 1(1) (Supp.1983). Generally, a substantial pay reduction or unreasonable change in terms of employment gives an employee good cause for quitting. *Scott v. The Photo Center, Inc.,* 306 Minn. 535, 235 N.W.2d 616 (1975). Relator has the burden of proving he quit for good cause attributable to the employer. *Zepp v. Arthur Treacher Fish & Chips Inc.,* 272 N.W.2d 262 (Minn.1978).

The Commissioner's representative found that the payments to relator were advances on his commissions, not salary, and that the new program was experimental, subject to discontinuation at any time. He further found that the employer never promised or guaranteed relator would be kept permanently on the new program, and the employer was therefore justified in notifying relator he had to return to the old program on the old terms. The findings are to be reviewed in a light most favorable to the decision, and if there is evidence reasonably tending to sustain them, they will not be disturbed. *Booher v. Transport Clearings of Twin Cities, Inc.,* 260 N.W.2d 181 (Minn.1977).

■ The transcript of the hearing before the appeal tribunal contains evidence to support the Commissioner's findings. Both the relator and the employer testified the new program was experimental; neither asserted any agreement that the advances would be continued indefinitely. Relator himself described the program as experimental and the payments as "temporary salary." Relator did not deny that some of the $300 checks had the notation "draw" or "adv. comm." written on them. Even if those $300 weekly payments were construed as salary, despite the weight of the evidence supporting the finding that they were advances against commissions, the employer had the right to require relator to accept reassignment to his old job at the old terms if those payments and the new job were intended to be "temporary" or experimental. Such reassignment, along with a suspension of weekly advances against commissions, was not a substantial change in terms of employment such that relator had good cause for quitting his employment.

## DECISION

The evidence supported the Commissioner's determination that the employer was justified in reassigning relator to his old position on a straight commission basis without advances.

AFFIRMED.