Mary E. NEUBERT, Relator,

v.

ST. MARY'S HOSPITAL & NURSING CENTER OF DETROIT LAKES, Department of Economic Security, Respondents.

No. CX-84-2105.

Court of Appeals of Minnesota.

April 9, 1985.

Charles A. Krekelberg, Williams, Nitz, Krekelberg, Stringer & Oldenkamp, Pelican Rapids, for Mary E. Neubert.

Joseph A. Evans, Benshoof, Hummel, Sinclair, Shruman, Pearson, Evans & Hunt, P.A., Detroit Lakes, for St. Mary's Hosp. & Nursing Center of Detroit Lakes.

Hubert H. Humphrey, III, Atty. Gen., Laura E. Mattson, Sp. Asst. Atty. Gen., St. Paul, for Department of Economic Sec.

Considered and decided by POPOVICH, C.J., and LANSING and FORSBERG, JJ., with oral argument waived.

## OPINION

LANSING, Judge.

Relator Mary E. Neubert appeals from the Commissioner of Economic Security's determination that she voluntarily resigned from her employment with respondent St. Mary's Hospital and Nursing Center. She claims that she resigned with good cause attributable to the employer. We reverse.

## FACTS

Mary E. Neubert was employed by St. Mary's Hospital and Nursing Center of Detroit Lakes from March 23, 1981, through June 1, 1984, as a radiologic technologist. She had received favorable evaluations throughout her employment. On Saturday, May 5, 1984, she was on emergency duty at the hospital. During her shift, a physician from a neighboring community contacted the hospital's switchboard operator to request that a ventilation perfusion lung scan be performed on one of his patients. The switchboard operator rang the on-call room and informed Neubert. Because Neubert was not qualified to do scans, she suggested that the operator locate an employee trained for the task or advise the physician to make his request on the following Monday, May 7, 1984.

In a letter to the hospital dated May 5, 1984, the physician who requested the scan complained about the manner in which his call had been handled. Hospital management also heard rumors that the physician attempted to use the incident to discredit the hospital in his community.

On May 9, 1984, Neubert attended a meeting with her supervisor and the hospital administrator. At the meeting the administrator chastised Neubert for not personally taking the physician's call and said Neubert's inaction constituted good cause for termination. Neubert was not discharged but was placed on probation for 90 days. The employer told her that no further disciplinary action would be taken if Neubert passed the probation period without incident.

When Neubert was hired she received an employee handbook, which provides in part:

Ordinarily, discipline will be handled in steps that become progressively stern. There is no mechanical formula for establishing disciplinary action in all cases, but these four factors will be considered:

—Seriousness of infraction. * * *

—The facts and circumstances surrounding the particular case.

—The employee's past record.

—St. Mary's actions in other similar cases.

Progressive steps consist of any or all of the following: discussion and/or verbal warning; discussion and/or written warning; final written warning; discharge.

The employee handbook does not expressly list probation as a disciplinary step.

Employees who are dissatisfied with disciplinary action taken by the hospital may invoke the problem-solving policy also described in the employee handbook. The four steps specified in the problem-solving policy are:

1. Discuss the problem with your Supervisor. * * *

2. Contact the Personnel Department. * * *

3. If your problem has not been resolved in Step 2, you may appeal to the next higher level of supervision, including the Administrator. * * *

4. If your problem involves an actual circumstance that calls for the application of a written rule or policy of St. Mary's and it has not been resolved in Steps 1 through 3, you may ask that the issue be presented to a conciliator, for his written recommendation.

Neubert did not seek conciliation under step 4. Instead, believing that she would be fired after the probation period and feeling that she had been treated unfairly because the hospital had disciplined her in this manner, she resigned her position effective June 1, 1984. The Commissioner's representative determined that Neubert voluntarily terminated her employment without good cause attributable to the em-

ployer because Neubert failed to "utilize her grievance procedure and continue in suitable work."

## ISSUE

Was Neubert voluntarily discharged with good cause attributable to the employer and therefore eligible for unemployment compensation benefits?

## ANALYSIS

Under Minn.Stat. § 268.09, subd. 1(1) (1984), an individual is disqualified from receiving unemployment benefits if the individual discontinues employment "voluntarily and without good cause attributable to the employer." This disqualification provision is to be narrowly construed. *Helmin v. Griswold Ribbon & Typewriter*, 345 N.W.2d 257, 260 (Minn.Ct.App.1984) (citing *Smith v. Employers' Overload Co.*, 314 N.W.2d 220, 222 (Minn.1981)). In reviewing the legal conclusion of the Commissioner's representative that Neubert quit without good cause, this court is free to exercise its independent judgment. *See Helmin*, 345 N.W.2d at 260. A determination of good cause does not require a finding that the employer acted wrongfully; the claimant need only establish that employment was discontinued for some good cause attributable to the employer. *Id.* at 260–61.

The Commissioner's decision is based on Neubert's failure to invoke the conciliation procedure provided in the employee handbook. Neubert argues, however, that the disciplinary action taken against her was unwarranted and that the hospital failed to follow its own procedures in disciplining her.

In *Pine River State Bank v. Mettille*, 333 N.W.2d 622 (Minn.1983), the Minnesota Supreme Court held that an employer's personnel handbook may become part of the employee's employment contract if the requirements for formation of a unilateral contract are met. *See id.* at 627. Job security provisions in the contract may be enforceable against an employer who hires at will. *Id.* at 629–30.

We applied that law to economic security cases in *Hoemberg v. Watco Publishers, Inc.*, 343 N.W.2d 676 (Minn.Ct.App.1984), in which we held that employees' actions did not constitute misconduct that would disqualify them from benefits because their employer failed to follow the disciplinary warning provisions of the employee handbook.

Although *Hoemberg* involved disqualification for misconduct, this court has also said that an employee has good cause to quit when an employer breaches the employment contract or reduces benefits. *See Helmin v. Griswold Ribbon & Typewriter*, 345 N.W.2d at 261 (employee quit for good cause when employer failed to provide health insurance paid for in part by the employee); *cf. Hanson v. I.D.S. Properties Management Co.*, 308 Minn. 422, 424–25, 242 N.W.2d 833, 834–35 (1976) (employee quit for good cause when the employer failed to withhold a union initiation fee as promised); *Porrazzo v. Nabisco, Inc.*, 360 N.W.2d 662, 663–64 (Minn.Ct.App.1985) (employee quit for good cause when employer substantially increased employee's work hours and job duties without a salary increase).

The hospital policy provided for progressive levels of warning culminating in discharge. The employer argues that the probation imposed upon Neubert was equivalent to a final warning and that Neubert has no basis for complaint because she could have been discharged immediately. However, probation was not the equivalent of a warning because while on probation Neubert was not allowed to take advantage of employment benefits, including vacation, sick leave and holidays. Furthermore, even if she had been discharged, she would have been eligible for unemployment benefits. The hospital does not claim that Neubert's conduct amounted to intentional misconduct that would disqualify her from unemployment benefits under Minn.Stat. § 268.09, subd. 1(2) (1984).

We find that in placing Neubert on probation, the hospital substantially departed from its own procedures. Although the

Commissioner determined that Neubert was disqualified for failing to seek conciliation, we hold that she had good cause to resign when her employer substantially breached the employment contract by placing her on probation instead of warning her as provided in the employee manual.

### DECISION

Relator resigned for good cause when her employer substantially deviated from the disciplinary policy contained in an employee manual, and she is not disqualified from receiving unemployment compensation benefits under Minn.Stat. § 268.09, subd. 1(1) (1984). The decision of the Commissioner of Economic Security is reversed.

Reversed.