Larry BURKE, Relator,

v.

DORSO TRAILER SALES, INC., and Department of Economic Security, Respondents.

No. C6–85–2001.

Court of Appeals of Minnesota.

March 11, 1986.

Larry Burke, pro se.

Jeffrey G. Stephenson, St. Paul, for Dorso Trailer Sales, Inc.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for Dept. of Economic Sec.

Considered and decided by HUSPENI, P.J., and FOLEY and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

NIERENGARTEN, Judge.

Relator Larry Burke appeals by writ of certiorari from a determination by the Commissioner's representative that he did not quit with good cause attributable to his employer. We affirm.

### FACTS

Respondent Dorso Trailer Sales, Inc. is a company that engages in the business of buying, leasing and selling trailers and related trailer equipment. Sales persons employed by Dorso are paid on a strict commission basis. Because sales are often erratic, Dorso pays its sales persons a weekly advance, or "draw", against their commissions.

Relator Larry Burke was employed as a sales person by Dorso from February 1982 to January 21, 1985. His 1982 employment contract with Dorso provided that his weekly draw would be $200, but in July 1984 the parties signed a new contract that raised his draw to $300 per week. The contract provided that at the end of each month the amount of Burke's weekly draws would be subtracted from the total commissions earned that month, and that if the amount of the draws received by Burke exceeded the amount of the commissions he had earned that month, the excess amount would be subtracted from commissions earned during the following month.

Sometime before January 21, 1985, Burke's sales went down and Dorso informed him that his weekly draw of $300 was going to be reduced to $200. Burke thereupon terminated his employment with Dorso.

Burke applied for unemployment compensation, and was denied benefits when a claim's deputy determined that he had voluntarily terminated his employment without good cause attributable to his employer. Burke appealed to a referee who determined that Burke had good cause to quit due to the reduction of his draw, which constituted a substantial breach of the par-

ties' written contract that provided Burke with a $300 weekly draw.

Dorso appealed and a Commissioner's representative reversed. Although finding that Burke believed the reduction in his draw was permanent, the Commissioner's representative nonetheless concluded that Burke did not have good cause to quit, citing this court's decision of *Cary v. Custom Coach, Inc.*, 349 N.W.2d 331 (Minn.Ct. App.1984).

Burke has appealed, claiming that *Cary* is inapplicable, since there was no evidence in the record indicating that his draws exceeded his commissions, and that a unilateral reduction in his pay in violation of his employment agreement constituted good cause to quit.

## ISSUE

Did the reduction of relator's draw constitute good cause to resign?

## ANALYSIS

An individual is disqualified from receiving unemployment compensation benefits if he "voluntarily and without good cause attributable to the employer, discontinued his employment * * *." Minn.Stat. § 268.09, subd. 1(1) (1984). Once it has been established that an employee has voluntarily quit, he has the burden of proving that his termination was with "good cause attributable to the employer." *Zepp v. Arthur Treacher Fish & Chips, Inc.*, 272 N.W.2d 262, 263 (Minn.1978). The Commissioner's conclusion that an employee quit without good cause is not binding on this court if it does not have reasonable support in the findings. *Id.*

In *Rutten v. Rockie International, Inc.*, 349 N.W.2d 334 (Minn.Ct.App.1984), we first addressed an employer's withdrawal of advances on an employee's commissions. There an employee had been originally hired on a strict commission basis with no advances promised, and had been returned to that basis following an experimental program, during which he was paid advances on his commissions. This court held that

the employee did not have good cause to quit when his advances were withdrawn, since the employer was justified in returning to the old terms.

In *Cary*, also, the employee received a regular draw against commissions. When the employee's sales dropped off and his draw exceeded his commissions, the employer discontinued the draw entirely and the employee quit. This court held that the employer's actions were not unreasonable, that the draw was not a wage but merely a loan to the employee, and that the employee did not have good cause to quit.

We find the present situation indistinguishable from *Rutten* and *Cary*.

## DECISION

Affirmed.

FOLEY, J., dissents.

FOLEY, Judge (dissenting).

I respectfully dissent. In general, "good cause attributable to the employer" does not require that an employer's actions be negligent or wrongful. *Helmin v. Griswold Ribbon & Typewriter*, 345 N.W.2d 257, 260–61 (Minn.Ct.App.1984), *pet. for rev. denied*, (Minn. June 12, 1984). In *Helmin*, an employer failed to provide an employee with continuous health insurance as promised, and also failed to notify the employee that the employer's health insurance plan had been cancelled for non-payment of premiums. The *Helmin* court stated:

> The [Commissioner's] representative improperly applied the legal reasoning of "misconduct" cases which require an *employee* to act in more than a negligent manner. Under the "good cause" section of the disqualification provisions of the unemployment compensation law, the standard does not require a finding that the *employer* was negligent or acted wrongfully.
>
> *       *       *       *       *       *
>
> Claimant only needs to establish that he discontinued his employment for some good cause attributable to his employer. * * * 'Good cause attributable to the em-

ployer' embraces situations where employees, through no fault of their own, leave their employment due to factors or circumstances directly connected therewith.

\*  \*  \*  \*  \*  \*

The few jurisdictions which have dealt with this type of good cause issue have consistently held that an employee has good cause attributable to the employer to resign his employment *when the employer has reduced benefits or breached the employment contract.* For example, the refusal of an employer to continue to reimburse an employee for living expenses when he was away, represented a sufficient change in conditions of employment to warrant voluntary leaving with sufficient cause connected with the employment. \* \* \* The failure to pay claimant for a day of sick leave according to the employer's policy presented just cause for terminating employment. \* \* \* Finally, a claimant who was not furnished gas and oil for his truck as previously agreed with the employer, left for good cause without fault attributable to the employer.

*Id.* at 260–61. (emphasis supplied; citations omitted).

The *Helmin* court cited two cases from Minnesota as authority for its decision. In *Hanson v. I.D.S. Properties Management Co.,* 308 Minn. 422, 242 N.W.2d 833 (1976), an employer had failed to withhold an employee's union dues from her paycheck as promised, resulting in her termination for non-payment of union dues. The *Hanson* court held that good cause was present for the employee's termination, indicating that although in this case the employer's conduct was negligent, negligence or wrongful conduct is not *required* to establish good cause:

Our case law also holds that negligence or wrongful conduct on the part of the employer is not necessary to establish good cause attributable to him. \* \* A substantial wage reduction can constitute "good cause." *Scott v. The Photo Center, Inc.,* 306 Minn. 535, 235 N.W.2d 616 (1975). Given this state of the law, we fail to see how admittedly negligent conduct proximately resulting in termination can be anything but "good cause."

*Id.* at 425 n. 1, 242 N.W.2d at 835 n. 1 (citation omitted).

Both the *Helmin* and *Hanson* courts cited *Fannon v. Federal Cartridge Corp.,* 219 Minn. 306, 18 N.W.2d 249 (1945), in which the court noted the policy statement[1] contained in the unemployment compensation statutes and concluded:

There is nothing in this language to justify the conclusion that benefits under the act accrue only when unemployment is the result of some *wrongful* act or *fault* of an employer.

*Id.* at 311, 18 N.W.2d at 252 (emphasis in original).

Generally, therefore, in cases in which an employer has promised to provide benefits to an employee, if the employer breaches his promise, an employee's termination will be found to be with "good cause attributable to the employer," even if the employer's conduct was not necessarily wrongful.

Recent cases from this court involving the payment of draws against an employee's commission have, at first glance, appeared to lean in a different direction, although without indicating specifically that this type of benefit or promise to an employee differs from other benefits or promises.

Although the reliance upon the "justification" for the employer's decision in *Rutten v. Rockie International, Inc.,* 349 N.W.2d 334 (Minn.Ct.App.1984), might appear con-

---

**1.** The policy statement cited by the *Fannon* court, which remains intact in the 1984 statutes, states:

The legislature \* \* \* declares that in its considered judgment the public good and the general welfare of the citizens of this state will be promoted by providing, under the police powers of the state for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

Minn.Stat. § 268.03 (1984).

fusing in light of *Helmin* and other decisions discussing "good cause," the *Rutten* court also indicated that the reassignment to the employee's original terms of employment was not a substantial change in the terms of employment, and therefore the employee did not have good cause to quit. This appears to be the real basis for the *Rutten* decision and fits more closely with the other "good cause" decisions discussed above.

The present case differs from *Rutten,* since Burke was promised all along that he would receive advances on his commissions. The reduction in Burke's advances, then, was a substantial change in the terms of his employment, unlike the situation in *Rutten.* This case would appear closer to the facts of *Scott v. The Photo Center, Inc.,* 306 Minn. 535, 235 N.W.2d 616 (1975), cited by *Rutten,* where the court held that "a substantial pay reduction gives an employee good cause for quitting." *Id.* at 536, 235 N.W.2d at 617.

In *Cary v. Custom Coach, Inc.,* 349 N.W.2d 331 (Minn.Ct.App.1984), however, this court specifically distinguished a reduction in pay from a reduction in an advance on commissions. There, we noted that an employee did not have good cause to quit when his draws were discontinued, because the draw "was, in effect, a loan from the employer to be charged against the employee's commissions." *Id.* at 332.

Despite the majority's argument, I find the present case to be very different from *Cary.* Notwithstanding the Commissioner's finding to the contrary, there is absolutely *no* evidence anywhere in the record that Burke's draws exceeded his commissions earned. The only evidence of Burke's pay was (improperly) submitted to the Commissioner following the hearing before the referee, but even this evidence does not indicate anywhere that Burke's draws exceeded his commissions. In *Cary,* on the other hand, this court found the employer's actions justified because the amount of the employee's draw over several months had exceeded his commissions by $4,000.

Further, *Cary* does not indicate that the parties had an agreement concerning the amount of the draw which the employee was to receive. Rather, the amount of the draw given to the employee in *Cary* apparently varied. Here, on the other hand, the parties had an actual written contract stating that Burke was to receive a $300 per week draw. Breach of that agreement was admitted. I would find that this breach constituted good cause for Burke to resign.