Lorraine E. HARVEY, Relator,

v.

GRIFFIN REAL ESTATE, INC., Commissioner of Jobs & Training, Respondents.

No. C8–86–681.

Court of Appeals of Minnesota.

Oct. 21, 1986.

Lorraine E. Harvey, pro se.

Griffin Real Estate, Inc., pro se.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for Commissioner of Jobs & Training.

Considered and decided by POPOVICH, C.J., and LANSING and CRIPPEN, JJ., with oral argument waived.

## OPINION

LANSING, Judge.

Lorraine Harvey appeals from a determination by the Commissioner's representative that she did not earn a sufficient number of credit weeks in her base period to qualify for unemployment compensation benefits. We affirm.

## FACTS

Lorraine Harvey worked for Griffin Real Estate Fund from March 1, 1985, to July 1, 1985, as a resident manager of an apartment complex owned by Griffin. After she was discharged, she applied for unemployment compensation benefits. The Commissioner of Jobs and Training denied benefits because Harvey had earned only 14 credit weeks of insured work within her base period of employment—one less than the 15 or more credit weeks required by Minn. Stat. § 268.07, subd. 2 (1984). The Commissioner based this determination upon a finding that Griffin had employed both Harvey and her husband as resident managers; thus, the Commissioner reasoned, Harvey was entitled to claim only one-half of the total compensation received from Griffin.

From March 1, 1985, to June 1, 1985, Harvey and her husband received wages of $965 per month, which included the $465 value of their apartment and garage. The Commissioner determined that Harvey's half of the $965 was sufficient to meet the statutory definition of "credit week:"

> "Credit week" is any week for which wages or back pay, actually or constructively paid, wages overdue and delayed beyond the usual time of payment, and back pay by or from one or more employers to an employee for insured work equal or exceed 30 percent of the average weekly wage computed to the nearest whole dollar. * * *

Minn.Stat. § 268.04, subd. 29 (1984). In 1985, 30 percent of the average weekly wage was $99.

However, Harvey and her husband went on vacation for the entire month of June and were not paid during that time. Although they were allowed to keep the apartment and garage in June, the weekly value of that amount, when divided in half to determine Harvey's share, did not equal or exceed the $99 per week required by the legislature's definition of "credit week."

Harvey argues that she should be allowed to claim the entire value of the apartment and garage as her own wages because she alone was Griffin's employee. If this claim were true, Harvey would be entitled to claim the four weeks in June as "credit weeks," which would give her 15 or more credit weeks for her base period. She would then be entitled to receive unemployment compensation benefits for the period following her separation from Griffin.

Harvey submitted the following evidence to support her claim that she and her husband were not hired as a couple and that she alone should be entitled to claim the compensation paid by Griffin:

(1) Griffin advertised in the newspaper for a resident manager/caretaker—not a couple;

(2) Only Harvey submitted timesheets to Griffin for payment;

(3) Paychecks were made out to Harvey and not to her husband;

(4) Harvey submitted separate purchase orders to Griffin when her husband painted apartments;

(5) Only Harvey's name appeared on NSP bills;

(6) Harvey's coverage under Griffin's insurance policy did not include dependent coverage;[1]

(7) In a subsequent unlawful detainer action brought by Griffin, personal service of the summons and complaint was made upon Harvey and not upon her husband; and

(8) Harvey's husband testified that, in a separate action in conciliation court, Griffin claimed he was not an employee and refused to pay for his extra work.

However, the record also contains the following evidence to support the Commissioner's finding that Harvey and her husband were hired as a couple:

(1) Griffin's payroll administrator testified that Harvey and her husband were hired as a couple;

(2) An employment resume submitted to Griffin included both Harvey's name and her husband's;

(3) Although Harvey testified that only her social security number was provided to Griffin, the employment application was filled out by Harvey's husband and contains his social security number. In addition, Harvey's husband completed a section in the application which stated, "[o]nly resident managers or building supervisors need complete these questions;"

(4) Both Harvey and her husband signed a "Business Manager Employee Agreement" for the position of "Business *Managers*" (emphasis added). Both names were typed at the top of the agreement. Additional writing at the bottom of the contract stated, "[i]t is understood and agreed *employees* will be gone from June 8–30 * * * " (emphasis added);

(5) A letter from Griffin dated March 12, 1985, which referred to the upcoming June vacation and the duties to be assumed by other employees, was addressed to both Harvey and her husband;

(6) A letter to Griffin dated May 25, 1985, was signed, "David and Lorraine Harvey Managers;"

(7) Three check-out sheets were signed by Harvey's husband as "Business Manager;" and

1. To substantiate this claim, Harvey appended to her brief a letter from Griffin's insurance company. Although this letter was not made a part of the record, Harvey's husband did testify that only Harvey was insured under Griffin's policy.

(8) By letter dated July 1, 1985, addressed to them both, Harvey and her husband were notified of their termination as resident *"managers."*

## ISSUE

Did the Commissioner's representative erroneously find that Griffin hired and paid Harvey and her husband as a couple?

## ANALYSIS

The factual findings of the Commissioner's representative are accorded considerable deference by this court. The evidence must be viewed in the light most favorable to the findings, and if there is evidence which reasonably tends to sustain those findings, they must not be disturbed. *Lumpkin v. North Central Airlines, Inc.,* 296 Minn. 456, 460, 209 N.W.2d 397, 400 (1973). This court may not weigh the evidence to determine where the preponderance lies. *Nyberg v. R & N Cardozo and Brother, Inc.,* 243 Minn. 361, 364, 67 N.W.2d 821 823 (1954).

Harvey stresses the fact that she submitted separate purchase orders to Griffin when her husband painted apartments; therefore, she argues, her husband was paid only for the painting and not for the resident manager duties. However, the record indicates that whether or not Harvey's husband was a resident manager, he would have been paid separately for the painting, since painting was not a resident manager's responsibility.

At the hearing Harvey's husband claimed that he signed the employment agreement with Griffin because he had agreed to be available for work beyond the regular 40 hours for which Harvey was responsible. However, the agreement stated:

> [I]t is understood that under no circumstances, outside an emergency, is it expected that you would work beyond a 40–hour work week * * *.

■ Although regular paychecks were made out to Harvey alone, that fact does not prove she was Griffin's sole employee.

Rules promulgated by the Commissioner state:

> Wages include the monetary value of:
>
> \* \* \* \* \* \*
>
> L. Payments made for services as a caretaker. Unless there is a contract or other proof to the contrary, remuneration shall be considered as being equally received by a married couple where the employer makes payment to only one spouse * * *.

Minn.R. 3315.0200, subpt. 4(L) (1985). This rule is not strictly applicable here, since it governs payments for "caretaker" services rather than resident manager services. However, due to the similarity between caretaker and resident manager positions, the rule suggests that Griffin's payments to Harvey should be considered as being equally received by her and her husband.

■ There is substantial evidence to support the Commissioner's finding that Harvey's husband was also a resident manager. The fact that Harvey's husband signed documents as "Resident Manager" cannot be overlooked. In addition, letters to and from Griffin were signed by and addressed to both Harvey and her husband as "Resident Managers." Harvey's husband himself filled out the employment application, and his name, along with Harvey's, appeared on an employment resume submitted to Griffin.

## DECISION

The Commissioner properly determined that Harvey and her husband were hired as a couple. Therefore, since Harvey could claim only one-half of the wages paid by Griffin, she did not earn a sufficient number of credit weeks to qualify for unemployment compensation.

Affirmed.