Judith **BESTLER**, Relator,

v.

**TRAVEL COMPANY OF MINNESOTA, Department of Jobs and Training, Respondents.**

No. CX–86–1380.

Court of Appeals of Minnesota.

Dec. 30, 1986.

Steven G. Heikens, Minneapolis, for Judith Bestler.

Travel Co. of Minnesota, pro se.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for Dept. of Jobs and Training.

Heard, considered and decided by POPOVICH, C.J., and WOZNIAK and FORSBERG, JJ.

## OPINION

FORSBERG, Judge.

Judith Bestler appeals from a determination that she did not have good cause to quit her job with the Travel Company of Minnesota. We affirm.

### FACTS

In February 1984, Judith Bestler began working as a vacation travel consultant for the Travel Company of Minnesota. The Travel Company hired Bestler away from her previous job because of her vacation travel experience. The parties never discussed whether Bestler would consider working in the Travel Company's commercial department. Bestler testified that she would not have accepted a position with the Travel Company in its commercial travel department because she believed vacation travel required more skill, whereas commercial travel consisted primarily of processing orders. The Travel Company's manager, however, stated in a letter to a Department of Jobs and Training that "[t]he agents in the business travel department * * * are also highly skilled and the job definitely consists of more than just order taking."

At the end of February 1986, the Travel Company's vice-president informed Bestler that she would be transferred to the commercial travel department, effective March 10, 1986. The Travel Company's manager testified that Bestler was transferred because of some problems in the vacation travel department and because she believed Bestler would be an asset in the commercial travel area, due to the fact that the Travel Company's international commercial travel business had increased. The manager also testified that Bestler's chances of increasing her salary were better in the commercial travel department.

Bestler was unhappy with the idea of a transfer, believing that it would be a step backwards in her career. She testified that it would be difficult to regain her expertise in vacation travel after being in commercial travel, since the vacation travel business

changes rapidly. Upon returning from her vacation the first week in March, Bestler refused the transfer and quit her job at the Travel Company.

Bestler testified that she had been earning $1,890 per month as a vacation travel associate and would have received a decrease in pay of $90 per month after the transfer. She also indicated that vacation travel associates traveled out of the country more and received $500 per year in travel benefits, while as a commercial travel counselor she would receive only $350 per year in travel benefits. She made no claim that her work hours or general benefits would have been affected by the transfer.

The manager testified that the scheduled reduction in Bestler's pay was the result of a new company-wide policy, and would have affected her in both the commercial and vacation travel departments.

## ISSUE

Did Bestler have good cause to quit when she was transferred to the commercial travel department?

## ANALYSIS

We recognize that the question whether Bestler had good cause to quit her job with the Travel Company is one of law. *See Neubert v. St. Mary's Hospital and Nursing Center*, 365 N.W.2d 780, 782 (Minn.Ct. App.1985). Nonetheless, this court must defer to the factual findings of the Commissioner's representative:

> [F]indings [must] be viewed in the light most favorable to the decision, and if there is evidence reasonably tending to sustain them, they will not be disturbed.

*White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983).

"Good cause to quit," for purposes of the unemployment compensation laws, has been defined as follows:

> [T]he circumstances which compel the decision to leave employment must be real, not imaginary, substantial not trifling,

and reasonable, not whimsical; there must be some compulsion produced by extraneous and necessitous circumstances. The standard of what constitutes good cause is the standard of reasonableness as applied to the average man or woman, and not to the supersensitive * * *.

*Ferguson v. Department of Employment Services*, 311 Minn. 34, 247 N.W.2d 895, 900 n. 5 (1976), (quoting from 81 C.J.S. *Social Security and Public Welfare* § 167). Good cause is generally found where the terms of the employment agreement or contract have been breached. *Helmin v. Griswold Ribbon and Typewriter*, 345 N.W.2d 257, 260–61 (Minn.Ct.App. 1984). While an employee has the burden of proving that he had good cause to resign, he need not establish that the employer acted in a negligent or wrongful manner. *Id.* at 262. Rather, he need only establish that the reasons were "connected with" his employment. *Id.*

In *Marty v. Digital Equipment Corp.*, 345 N.W.2d 773 (Minn.1984), an employee was terminated when she refused to accept a transfer from her position as personnel assistant (at a grade level 10, the top clerical grade with a maximum potential salary of $10.18 per hour) to a sales position (at a grade level 8, with a maximum potential salary of $9.30 per hour). The Minnesota Supreme Court reversed the Commissioner's determination that the employee did not have good cause to refuse the transfer, stating:

> The sales position offered to Marty was not substantially equivalent to her personnel position * * *. We have recognized that a claimant has a right to reject, without loss of benefits, a job which requires substantially less skill than she possesses. *Hendrickson v. Northfield Cleaners*, 295 N.W.2d 384, 386 (Minn.1980).[1]

*Id.* at 775.

*Marty* is distinguishable, since in the present situation a letter from the Travel

---

1. In *Hendrickson,* the employee was found to    have good cause to turn down a reoffer of her

Company indicates that the commercial travel area would have also required Bestler's skill, and that the transfer would have definitely involved more than simple order-taking, as Bestler claimed. The Commissioner's determination that there was "no appreciable difference" between the two jobs is supported by this evidence.

Further, we note that when Bestler was hired, the Travel Company did not expressly represent that Bestler would only work in the vacation travel department. Therefore, by transferring her to the commercial travel department, the Travel Company did not breach the terms of Bestler's employment agreement.[2]

## DECISION

Under our narrow scope of review, we are compelled to affirm the Commissioner's determination that Bestler did not have good cause to quit her job with the Travel Company.

Affirmed.

previous summer job at a laundromat, since she was one quarter away from receiving a degree as a registered nurse.

2. Bestler's claim that the Travel Company breached Minn.Stat. § 181.55 (1984), requiring written employment contracts, was not raised below. The claim is therefore improperly raised at this level. *See Wesley v. Durance Corp.,* 363 N.W.2d 858 (Minn.Ct.App.1985).