**Gary A. DINGMANN, Relator,**

**v.**

**TRAVELERS COUNTRY CLUB and Commissioner of Jobs and Training, Respondents.**

**No. C7–87–2013.**

Court of Appeals of Minnesota.

March 1, 1988.

Timothy W. Nelson, Donohue, Rajkowski, Hansmeier, Grunke & Jovanovich, Ltd., St. Cloud, for relator.

Travelers Country Club, pro se.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for Commissioner of Jobs and Training.

Considered and decided by WOZNIAK, C.J., and PARKER and SCHUMACHER, JJ., without oral argument.

## OPINION

SCHUMACHER, Judge.

Relator Gary Dingmann seeks review of a determination that he voluntarily quit his job and is therefore disqualified from receiving unemployment compensation benefits. We reverse.

## FACTS

Gary Dingmann began working as a groundsperson for the respondent Travelers Country Club ("club") in June 1982. In July 1985, after he became engaged to be married, Dingmann was promoted to the position of general manager. At the time, the president of the club told Dingmann that in order to be a general manager, he must be married, since it was board policy for the position of general manager to be filled by a married couple.

Dingmann and his wife shared the general manager position; Dingmann supervised outside, and his wife worked in the office. They were paid approximately $16,500 per year, and also received an apartment rent-free.

On May 16, 1987, Dingmann's wife quit working for the club. Dingmann did not tell the president that he wanted to quit too; in fact, he asked the president to see if he could be placed in another position if possible. Nevertheless, the president terminated Dingmann from his position on May 16. On Dingmann's separation notice, under "Reason for Notice," the president did not check the box "Voluntary Quit," but placed an "X" in the box in front of "Other Reason."

Dingmann applied for unemployment compensation, and a hearing was conducted by a referee from the Department of Jobs and Training to determine his entitlement to benefits. Following the hearing, the referee ruled that Dingmann had voluntarily quit his employment when his wife quit. On appeal, a Commissioner's representative affirmed, stating:

We are troubled by the fact that the claimant himself did nothing wrong and wanted to keep his job, in light of the

basic policy of the unemployment compensation law as expressed in Minnesota Statute § 268.03 that "unemployment reserves (are) to be used for the benefit of persons unemployed through no fault of their own." Nevertheless, we agree with the referee's reasoning and decision * * *.

## ISSUE

Did Dingmann voluntarily quit his position with the club?

## ANALYSIS

██ Minn.Stat. § 268.09, subd. 1(1) (1986) provides that an individual who voluntarily and without good cause attributable to the employer discontinues his employment is disqualified from receiving unemployment compensation benefits. The term "voluntary quit" must be narrowly construed. *See Smith v. Employers' Overload Co.*, 314 N.W.2d 220, 222 (Minn. 1981). The test is whether the individual has exercised his own free will or choice in the separation. *Seacrist v. City of Cottage Grove*, 344 N.W.2d 889 (Minn.Ct.App.1984). As the Commissioner's representative noted, the policy provisions of the unemployment compensation statutes provide that unemployment compensation is to be used "for the benefit of persons unemployed through no fault of their own." Minn.Stat. § 268.03 (1986). Provisions disqualifying an individual from the receipt of unemployment compensation benefits are narrowly construed in favor of allowing benefits. *Helmin v. Griswold Ribbon & Typewriter*, 345 N.W.2d 257, 260 (Minn.Ct.App.1984).

██ The record clearly indicates that Dingmann did not voluntarily quit his position as general manager, even though his wife did quit. The Commissioner's representative specifically noted that Dingmann wished to continue working for his employer, and the president of the club himself did not view Dingmann's separation as a voluntary quit at the time.

During the hearing, the referee referred to Dingman's separation as a "constructive voluntary quit," and the parties have raised this doctrine in their briefs. This doctrine has been repeatedly rejected by both the courts and the legislature, and we decline to resurrect it in this case. *See LaSalle Cartage Co., Inc. v. Hampton*, 362 N.W.2d 337, 341 (Minn.Ct.App.1985).

The referee reasoned: "To require the employer to furnish the claimant an apartment alone would in effect be giving him a substantial raise because his wife had quit." This argument fails to recognize that Dingmann's duties would have also increased substantially when his wife quit. The record does not indicate that Dingmann was allowed a chance to do the work himself or work out an alternate arrangement.

██ In *Harvey v. Griffin Real Estate, Inc.*, 394 N.W.2d 597 (Minn.Ct.App.1986), an employee and her husband were hired as a couple to act as resident managers of an apartment complex. When the couple was discharged, the wife applied for unemployment compensation benefits, claiming that she had been hired on her own and should receive all of the wages paid to both her and her husband for the purpose of determining the number of her "credit weeks." This court affirmed the Commissioner's determination that the two were hired as a couple and that the wife could therefore claim only one-half of the wages paid by the employer. *Id.* at 600. In *Harvey*, the wages were split between the couple in order to determine wage credits; likewise, here, the decision of Dingmann's wife to quit may be split from the decision of Dingmann himself, which was to continue employment with the country club.

Finally, we note that the issues raised by the parties involving agency law or possible discrimination under Minn.Stat. § 363.03, subd. 1 are issues more properly raised in an action to determine whether or not the club had a legal right to terminate Dingmann's employment based upon his wife's resignation. Here, the only question is whether or not Dingmann voluntarily quit his employment for unemployment compensation purposes. For those purposes, we find Dingmann's separation involuntary.

## DECISION

The Commissioner erred by finding that Dingmann's separation was voluntary.

Reversed.