Dixie A. MARTY, Relator,

v.

DIGITAL EQUIPMENT CORPORATION, Respondent,

Commissioner of Economic Security, Respondent.

No. C3-83-1027.

Supreme Court of Minnesota.

March 23, 1984.

774

Tanick & Heins, Minneapolis, for relator.

Roger A. Johnson, Minneapolis, for respondent Digital Equipment Corp.

Hubert H. Humphrey, III, Atty. Gen., Laura E. Mattson, Sp. Asst. Atty. Gen., St. Paul, for respondent Dept. of Economic Sec.

KELLEY, Justice.

The issue in this appeal is whether the record reasonably supports the decision of the Commissioner of Economic Security, in reversing the appeal tribunal, that Dixie A. Marty voluntarily discontinued her employment without good cause attributable to her employer and was, therefore, disqualified from receiving unemployment compensation benefits pursuant to Minn.Stat. § 268.09, subd. 1(1) (1982). Because we conclude it does not, we reverse.

Dixie A. Marty was first employed by Digital Equipment Corporation (Digital) in 1977. Digital had a written personnel policy. Section 6.04 of that policy provided that (1) employees could not work under the direct supervision of a relative, (2) relatives could not work in the same cost centers, and (3) employees could not be placed in positions where they would have access to privileged or confidential information about a relative. "Relative" was defined as a parent, spouse, child, sibling, in-law or grandchild. The policy also provided that relatives employed in positions in violation of the policy would be treated as exceptions to the policy until mutually agreeable transfers could be arranged.

In 1978, Marty began living with John Francy, a Digital salesman. Later in the same year she was offered a promotion to personnel secretary. After informing her superiors of this relationship and after receiving assurances it would cause no problem, Marty accepted the promotion. In 1981, she applied for the position of field personnel assistant. She again informed her superiors of her relationship with Francy. She was then told the relationship was not a problem provided she did not commit a breach of confidentiality.

In 1982, Digital reinterpreted personnel policy 6.04, extending it to employees who, although not married, nevertheless maintained a romantic relationship. Marty was then told the reinterpretation applied to her; as a consequence, she would not be allowed to remain in her personnel position. She was offered a position in sales at the same salary but was told that if she refused the new position, Digital would consider the refusal a voluntary resignation. Because her opportunities for advancement and future pay were more limited in the proffered sales position, she refused and was terminated in August 1982.

As a personnel assistant, Marty was classified on a grade level 10, Digital's top clerical grade. Her work included maintaining personnel files and writing employ-

ee reviews and evaluations. Salary planning and handling affirmative action matters were likewise a part of the position. Only approximately 5% of her time was spent performing purely clerical functions. Although she was earning $8.30 an hour when terminated, in that grade level the maximum potential salary obtainable was $10.18 an hour. In addition, there was some prospect of advancement to personnel specialist or technical recruiter.

The sales position offered to her was a grade level 8 in which the maximum obtainable prospective remuneration was $9.30 an hour. This job required handling customer calls, filing, answering the telephone, typing, shorthand and dictaphone work—duties generally of a clerical and stenographic nature. In the grade level 8 position, her future opportunities were not only limited as to future pay but also careerwise. Since Francy was employed in Digital's operations division, where 17 of Digital's 19 sales positions were located, personnel policy 6.04 would bar her promotion into that division.

The record indicates the absence of any suggestion other than that Marty was an effective and prompt employee and was guilty of no misconduct. Marty contends she did not voluntarily resign. She claims she was forced to leave the company because of its reinterpretation of personnel policy 6.04. She asserts the sales position she was offered was wholly inferior to her personnel position and that, therefore, she had good cause not to accept it.

Our scope of review, of course, is narrow. The commissioner's findings must be reviewed in the light most favorable to his decision. *Reserve Mining Co., Babbitt Division v. Gorecki,* 316 N.W.2d 547, 549 (Minn.1982). But his conclusions are not binding upon this court if they do not have reasonable support in the findings. *Zepp v. Arthur Treacher Fish & Chips, Inc.,* 272 N.W.2d 262, 263 (Minn.1978).

Here, the record and findings do not sustain the commissioner's conclusions. His conclusions were based on erroneous facts. He determined the difference in salary potential between the sales and personnel positions was 2.9%. Both the findings of the appeal tribunal (which the commissioner adopted) and the record clearly indicate that the difference in salary potential between the two positions was 10.6%. The appeal tribunal specifically found that Marty did not intend to quit her personnel position and was willing to remain employed by Digital in any position she believed to be comparable to her personnel assistant position.

The sales position offered to Marty was not substantially equivalent to her personnel position. Although her starting pay would remain the same, the sales position was two grades lower than the personnel position that she had held. Her chances of advancement in the sales position were limited, and the potential maximum salary was 10.6% less in that position than in her former position. We have recognized that a claimant has a right to reject, without loss of benefits, a job which requires substantially less skill than she possesses. *Hendrickson v. Northfield Cleaners,* 295 N.W.2d 384, 386 (Minn.1980). Marty's refusal to accept the sales position offered to her did not amount to a voluntary resignation because she had good cause for refusing the offered position.

Reversed.