**Rebecca McLANE, Relator,**

v.

**CASA DE ESPERANZA, Department of Jobs and Training, Respondents.**

No. C4–85–2093.

Court of Appeals of Minnesota.

April 22, 1986.

Nina W. Tarr, William C. Skye, Certified Student Atty., St. Paul, for relator.

Casa de Esperanza, pro se.

Hubert H. Humphrey, III, Atty. Gen., James P. Barone, Sp. Asst. Atty. Gen., St. Paul, for Dept. of Jobs and Training.

Heard, considered, and decided by CRIPPEN, P.J., and WOZNIAK and SEDGWICK, JJ.

### OPINION

WOZNIAK, Judge.

Relator Rebecca McLane requests review of a determination that she did not have good cause to quit her job with the respondent Casa de Esperanza. We affirm.

### FACTS

Rebecca McLane was employed in February 1984 as a women's advocate for Casa de Esperanza, a shelter for battered women and children. Prior to that time, she had done volunteer and relief work for the shelter which is a 24-hour residence.

The shelter is funded by the Minnesota Department of Corrections, Ramsey County Human Services, and private sources. It was located at the YWCA while McLane was volunteering, but moved to a separate facility shortly after she was hired as an advocate.

In January 1985, McLane and the other staff members were notified that the shelter was in a state of financial crisis, that beginning January 20, all full-time staff persons' hours would be reduced from 40 to 33 hours per week, and that salaries would be frozen, although fringe benefits would be maintained. McLane's hours were reduced until May 1985, when she resumed working 40 hours per week. She did not receive her annual evaluation and salary increase which was scheduled for February 1985, but her salary could not have been adjusted at that time anyway.

Between January and June 1985, McLane and the other advocates became more and more dissatisfied with the working conditions at the shelter. Their main concerns were with the scheduling of work hours, "comp" time, and vacation time. They also questioned the shelter's handling of financial matters, and complained of poor management, inadequate facilities and maintenance, low staff morale, and a constant struggle between staff members, the director of the shelter, and the board of directors.

Due to increasing frustration with the administration of the shelter, in April and May 1985, some of the staff members and residents contacted the Department of Corrections with their complaints. An investigation was begun, and in May a report was issued by the Department containing its recommendations and stipulations. A copy of the report was sent to the members of the board and staff of the shelter on June 11, 1985; however, on June 12, prior to receiving the report, McLane quit. Although she was aware of what the report would contain, McLane felt that there was no hope for change and that the recommendations would take too long to implement.

## ISSUE

Did McLane have "good cause" to resign from Casa, within the meaning of Minnesota's unemployment compensation laws?

## ANALYSIS

Our scope of review of the Commissioner's factual findings is limited:

> The narrow standard of review requires that findings be viewed in the light most favorable to the decision, and if there is evidence reasonably tending to sustain them, they will not be disturbed.

*White v. Metropolitan Medical Center,* 332 N.W.2d 25, 26 (Minn.1983).

Since there is no dispute in this case that McLane voluntarily discontinued her employment, the only issue is whether she met her burden of proving that she quit with "good cause" attributable to her employer. *Zepp v. Arthur Treacher Fish & Chips, Inc.,* 272 N.W.2d 262, 263 (Minn. 1978). The test for "good cause" has been defined as "whether the employee's reason for quitting was compelling, whether it was real and not imaginary, substantial and not trifling, reasonable and not whimsical or capricious." *Ferguson v. Department of Employment Services,* 311 Minn. 34, 44, 247 N.W.2d 895, 900 (1976); *Kratochwill v. Los Primos,* 353 N.W.2d 205, 207 (Minn.Ct. App.1984). "The standard of what constitutes good cause is the standard of reasonableness as applied to the average man or woman, and not to the supersensitive * *." *Ferguson,* 311 Minn. at 44, 247 N.W.2d at 900 n. 5.

The Commissioner's representative properly found that conditions at the shelter were improving when McLane left, and that she had resigned prematurely. As the Commissioner's representative noted, McLane was aware that the Department of Corrections was in the process of investigating and preparing a report; thus, she should have waited for new action to be taken before deciding to resign.

In *Jaakola v. Duluth/Superior Area Educational Television Corp.,* 374 N.W.2d

215 (Minn.Ct.App.1985), this court found that no good cause existed where the employee quit prematurely. In that case, the employee did not give the employer sufficient time to investigate and possibly correct the cause of the employee's dissatisfaction. In the present case, although McLane had voiced complaints, and although the director told McLane that she did not see any prospect for change, nonetheless, McLane was aware that the Department report would contain recommendations and stipulations regarding the organization and operation of the shelter. In light of the fact that McLane's complaints were still being investigated at the time of her resignation, her decision to quit was premature.

### DECISION

McLane voluntarily terminated her employment without good cause attributable to her employer and is not entitled to receive unemployment compensation benefits.

Affirmed.