Mary HOLBROOK, Relator,

v.

MINNESOTA MUSEUM OF ART,
Commissioner of Jobs and
Training, Respondents.

No. C8–86–2110.

Court of Appeals of Minnesota.

May 19, 1987.

Review Denied July 15, 1987.

Ann Juergens, William Mitchell Law Clinic, St. Paul, for relator.

Kathryn A. Graves, Moore, Costello & Hart, St. Paul, for Minnesota Museum of Art.

Hubert H. Humphrey III, Atty. Gen., Donald Notvik, Sp. Asst. Atty. Gen., St. Paul, for Commissioner of Jobs and Training.

Heard, considered and decided by POPOVICH, C.J., and LANSING and MULALLY,* JJ.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

## OPINION

LANSING, Judge.

Relator Mary Holbrook challenges a determination by the Department of Jobs and Training that she voluntarily quit, without good cause, her job with respondent Minnesota Museum of Art. We reverse.

## FACTS

The Minnesota Museum of Art hired Mary Holbrook in October 1981 to work 15 hours per week as a curatorial assistant. At the time she was hired, Holbrook held a Bachelor of Arts degree from the University of Minnesota [1] and had finished the necessary class work for a Masters degree in the classics area. She had a background in research and library work.

During Holbrook's first few years at the museum, she performed primarily clerical work, although when she was hired she was assured that research would be an important part of her job. In November 1983 she wrote a letter to her supervisor complaining about her duties and requesting additional responsibilities involving research, collection, cataloging and teaching.

Holbrook was subsequently promoted to the position of assistant curator and her hours were eventually increased from 15 to 27.5 hours per week. Her responsibilities also increased and, by 1985, the bulk of her time was spent on research and documentation. Holbrook spent approximately one-third of her time performing secretarial or clerical work; however, the curatorial department had no support staff and all employees in that department—even the head curator—performed some clerical duties.

In the summer of 1985 Holbrook learned that, due to funding limitations, her position as assistant curator would be eliminated and she would be reassigned to two half-time positions in other departments. The positions were primarily clerical in nature, but Holbrook was informed that if she accepted them, a review would be held in three months, at which time the positions might be upgraded. Holbrook refused to accept the reassignment and left the museum when her assistant curator position ended. Her claim for unemployment compensation benefits was denied on the basis that she did not have good cause to decline the clerical positions.

## ISSUE

Did Holbrook have good cause to refuse the two clerical positions when her position as assistant curator was eliminated?

## ANALYSIS

Minn.Stat. § 268.09, subd. 1(1) (1986), states that an individual is disqualified from receiving unemployment compensation benefits for quitting a job "voluntarily and without good cause attributable to the employer." The Commissioner's representative determined that Holbrook did not have good cause to turn down the two half-time clerical positions and was therefore disqualified from receiving unemployment compensation benefits.

When, as here, the relevant facts are undisputed, the question of whether an employee had good cause to quit is one of law, to be independently determined by this court. *Forsberg v. Depth of Field/Fabrics*, 347 N.W.2d 284, 286 (Minn. Ct.App.1984). "Good cause" does not require a finding that the employer was at fault or acted wrongfully. *Helmin v. Griswold Ribbon and Typewriter*, 345 N.W.2d 257, 262 (Minn.Ct.App.1984), *pet. for rev. denied*, (Minn. June 12, 1984) (citing *Hanson v. IDS Properties Management Company*, 308 Minn. 422, 425 n. 1, 242 N.W.2d 833, 835 n. 1 (1976)). Rather, this court has stated:

> The proper test for "good cause attributable to the employer" is whether the employee's reason for quitting was compelling, real and not imaginary, substantial and not trifling, reasonable and not whimsical and capricious.

*Kratochwill v. Los Primos*, 353 N.W.2d 205, 207 (Minn.Ct.App.1984) (citing *Ferguson v. Department of Employment Ser-*

---

**1.** The parties dispute whether Holbrook's degree was in Latin or the classics.

*vices,* 311 Minn. 34, 44, 247 N.W.2d 895, 900 (1976)).

The Commissioner's representative cited several reasons for believing that Holbrook did not have good cause to reject the two clerical positions. First, he noted that Holbrook would have continued to receive the same hourly wage she had been receiving as assistant curator. In fact, the increase from her 27½–hour–per–week position as assistant curator to 40 hours per week from both half-time clerical positions would have actually resulted in an increase in Holbrook's weekly pay. In addition, she would have received more benefits by working 40 hours per week.

The fact that Holbrook would not have received a reduction in pay by accepting the clerical positions is not determinative. In *Marty v. Digital Equipment Corporation,* 345 N.W.2d 773 (Minn.1984), a personnel assistant with a maximum potential salary of $10.18 was offered a sales position with a maximum potential salary of $9.30 per hour. Although her salary would have initially been the same, she refused the transfer, believing it would reduce her opportunities for advancement and future pay. The supreme court agreed, concluding that the employee had good cause to refuse the new position:

> We have recognized that a claimant has a right to reject, without loss of benefits, a job which requires substantially less skill than she possesses.

*Id.* at 775.

Holbrook had advanced to a position requiring only limited clerical work. The half-time clerical positions would have involved less responsibility and there was evidence that the pay scales for those positions were lower than the pay scale for her assistant curator position.

The Commissioner's representative relied on *Simonson v. Thin Film Technology Corporation,* 392 N.W.2d 363 (Minn.Ct. App.1986), *Heisler v. B. Dalton Bookseller,* 368 N.W.2d 314 (Minn.Ct.App.1985), and *Forsberg* as authority for his conclusion that Holbrook did not have good cause to refuse the transfer. These cases are distinguishable. In *Simonson* the employ-ee was reassigned to a lower-grade position with a reduction in pay after she returned from a two-month leave of absence. In addition, the employer had a policy of rotating its employees to different positions. In *Heisler* the employee was demoted after she failed to improve her job performance. In *Forsberg* the employee's increased responsibilities were intended to be temporary, lasting only three months. Holbrook had not taken a leave of absence or received poor performance reviews, nor did the museum have an established policy of rotating its employees to different positions. There has been no claim that Holbrook's assistant curator responsibilities were intended to be temporary. In addition, there is no indication in the *Forsberg* opinion that the employee was overqualified for the offered position. Holbrook was clearly overqualified for the primarily clerical positions.

The Commissioner's representative also concluded that Holbrook did not have good cause to quit because the two half-time positions were not totally clerical:

> Some of the duties were: maintaining the art work in the "kid space," assisting in the supervising of "kid space" interns; and serving as "an information resource person for the community, answering inquiries on all activities of the Museum, particularly those sponsored by the Museum school"; performing other duties as may be assigned.

The Commissioner also found that everyone in the curatorial department did some clerical work, and job descriptions were not totally accurate. Nevertheless, the representative specifically found that the two half-time positions were "primarily" clerical in nature. In view of this finding, the proposed reassignment constituted good cause for Holbrook to quit.

The Commissioner's representative relied heavily on the "possibility" that the two clerical positions might have been upgraded in three months and concluded that Holbrook's separation was premature. While we have held that an employer should be given an opportunity to correct unfavorable working conditions, *see, e.g., McLane v.*

*Casa de Esperanza,* 385 N.W.2d 416, 417–18 (Minn.Ct.App.1986), none of those cases involved a demotion. To hold that Holbrook should have performed primarily clerical duties for three months to see if she might ever be promoted would be a departure from our previous holdings.

■ Finally, the Commissioner's representative determined that Holbrook did not have good cause to turn down the clerical positions because the museum's offer was not unreasonable or unfair. This consideration is not relevant to eligibility for unemployment compensation. *Helmin,* 345 N.W.2d at 262 (citing *Hanson v. IDS Properties Management Company,* 308 Minn. 422, 425 n. 1, 242 N.W.2d 833, 835 n. 1 (1976)).

### DECISION

The Commissioner's representative erroneously concluded that Holbrook did not have good cause to quit.

Reversed.