Pete O. WOOD, Respondent,

v.

MENARD, INC., Relator,

Commissioner of Jobs and Training, Respondent.

No. CX–92–1047.

Court of Appeals of Minnesota.

Oct. 13, 1992.

Stephen G. Bohrer, Eau Claire, Wis., for Menard, Inc.

Pete O. Wood, pro se.

Kent E. Todd, St. Paul, for Com'r of Jobs and Training.

Considered and decided by KLAPHAKE, P.J., and RANDALL and KALITOWSKI, JJ.

## OPINION

RANDALL, Judge.

Employer Menard, Inc. appeals the Commissioner's representative's decision that employee Pete O. Wood voluntarily terminated his employment with good cause attributable to his employer due to a substantial decrease in pay. We reverse and remand.

## FACTS

Pete O. Wood was employed full time by Menard, Inc. beginning in May 1990. Originally, Wood was hired to work solely as a lumberyard worker, but was asked if he would like to drive the delivery trucks as well. Wood accepted the position and was paid an hourly wage of $6.30. Thereafter, Wood spent approximately half of his time in the lumberyard and the other half delivering merchandise to customers. However, there was no guarantee that Wood would make a certain number of deliveries during his employment with Menard.

In June 1992, Wood began receiving 15.5 cents per mile, plus additional sums for stops and handling when making deliveries, therefore his hourly salary averaged from $8.00 to $9.00 per hour when driving and making deliveries. He also received profit sharing starting at 2.5% of compensation and increasing by 2.5% each year. Additionally, he received vacation and holiday pay based on his hourly salary of $6.30. Wood's hours in each position varied due to the seasonal nature of Menard's business. The busiest time is in the fall and the slowest months are during the winter. During the busy season, people work in the yard between 45 and 55 hours per week and are paid time and a half for time worked over 40 hours.

In December 1991, Menard told its lumberyard employees that it had contracted out independent delivery drivers. Menard could not predict if anyone would suffer financially at that time. Wood asked whether there would be any additional compensation but was told that there would be no added pay. He continued to work an

average of 40 hours per week for three weeks.

In December 1991, Wood told Menard that he would be quitting in two weeks because he was losing pay. Wood was making $6.40 per hour, with an increase due in May to $6.50 per hour. His profit sharing at the time of termination was up to 7.5%.

Wood filed a claim for unemployment compensation benefits, and the Department determined that Menard arbitrarily changed Wood's job and pay scale to his detriment, resulting in his voluntary resignation with good cause attributable to Menard. A referee affirmed the Department, concluding Wood's pay decreased by 20%. The Commissioner's representative affirmed the referee's decision, determining that Wood's income decreased by 17%.

## ISSUE

Does the record support the Commissioner's representative's determination that Wood voluntarily terminated his employment with good cause attributable to his employer due to a substantial reduction in pay?

## ANALYSIS

■ In general, Minnesota unemployment compensation laws are remedial in nature and are liberally construed. *Hendrickson v. Northfield Cleaners*, 295 N.W.2d 384, 385 (Minn.1980). The legislature intended to assist those who are unemployed through no fault of their own. Minn.Stat. § 268.03 (1990); *Yackel v. St. Paul School of Hairdressing, Inc.*, 270 Minn. 203, 205, 133 N.W.2d 29, 31 (1965). Disqualification provisions are narrowly construed. *Danielson Mobil, Inc. v. Johnson*, 394 N.W.2d 251, 253 (Minn.App.1986).

The findings must be reviewed in the light most favorable to the decision, and if there is evidence reasonably tending to sustain the findings, they will not be disturbed. *White v. Metropolitan Medical Ctr.*, 332 N.W.2d 25, 26 (Minn.1983). Whether Wood had good cause to quit his job with Menard is a question of law. *See Bestler v. Travel Co.*, 398 N.W.2d 611, 613 (Minn.App.1986) (citing *Neubert v. St. Mary's Hosp. & Nursing Ctr.*, 365 N.W.2d 780, 782 (Minn.App.1985)).

■ There is no dispute that Wood voluntarily terminated his employment with Menard. An employee who voluntarily discontinues a job is not entitled to receive unemployment compensation benefits unless it is determined that the employee quit with "good cause attributable to the employer." Minn.Stat. § 268.09, subd. 1(a) (1990). To avoid disqualification from benefits, the employee bears the burden of showing the separation was for good cause attributable to the employer. *Heisler v. B. Dalton Bookseller*, 368 N.W.2d 314, 316 (Minn.App.1985).

The tests for "good cause to quit" for purposes of unemployment compensations laws, have been defined:

> [T]he circumstances which compel the decision to leave employment must be real, not imaginary, substantial not trifling, and reasonable, not whimsical; there must be some compulsion produced by extraneous and necessitous circumstances. The standard of what constitutes good cause is the standard of reasonableness as applied to the average man or woman, and not to the supersensitive.

*Ferguson v. Department of Employment Servs.*, 311 Minn. 34, 44, 247 N.W.2d 895, 900 n. 5 (1976).

■ Generally, a substantial pay reduction or an unreasonable change in terms of employment gives an employee good cause for quitting. *See Sunstar Foods, Inc. v. Uhlendorf*, 310 N.W.2d 80, 84 (Minn.1981) (20–25% pay reduction was substantial, but less than 15% was not sufficient to show good cause); *Scott v. The Photo Center, Inc.*, 306 Minn. 535, 536, 235 N.W.2d 616, 616–17 (1975) (change in pay from a fixed salary to a commission, resulting in a 25% pay reduction was substantial); *McBride v. LeVasseur*, 341 N.W.2d 299, 300 (Minn. App.1983) (unilateral 30% pay reduction was substantial).

■ The Commissioner's representative determined that Wood's salary would decrease by approximately 17%. The representative determined that the "rate of pay" was the issue rather than Wood's "actual pay." Therefore, he did not consider holiday, overtime, or profit sharing in determining the pay decrease. The Commissioner's representative said in passing that these items were not a concern as they would remain about the same. While these items, when calculated, might remain about the same, excluding them was erroneous.

In calculating a reduction in wages, the Commissioner's representative must include cash and *all* remuneration *of any nature* other than cash. The definition of "wages" for purposes of unemployment compensation is straightforward:

> "Wages" means all remuneration for services, including commissions; bonuses; back pay as of the date of payment; tips and gratuities paid to an employee by a customer of an employer and * * * the cash value of all remuneration in any medium other than cash * * *.

Minn.Stat. § 268.04, subd. 25 (1990). The Commissioner's representative erred by not including holiday, overtime, and profit sharing in calculating whether Wood's decrease in salary was substantial. It is true that holiday pay, overtime pay, and profit sharing pay may differ from one pay period to the next, may significantly go up or down, and may come at irregular intervals. Of necessity, this may make calculation difficult and may not lend itself to the precise calculation a straight W–2 stub does. However, the statute also explicitly states that commissions, bonuses, and tips, among other things, are to be considered, and those have been calculated by the Commissioner in the past. Those items also fluctuate and come at irregular intervals. The statute appears to give us no choice. A reasonable attempt to include them must be part of the calculation.

■ Wood also argues he was demoted because he found driving duties more attractive than lumberyard work. Receiving a demotion can be a substantial change in employment justifying separation. *Mar-*

*ty v. Digital Equipment Corp.*, 345 N.W.2d 773, 775 (Minn.1984). However, the record does not show that driving duties required more skill than a position in a lumberyard. The delivery duties were sporadic, were not guaranteed, and Wood was not supervised as a driver. Additionally, his holiday and vacation pay were based on his position in the lumberyard. Although Wood may have found driving duties more attractive, he has not shown he was demoted.

We find no evidence reasonably tending to support the Commissioner's representative's findings. On remand, the representative should make a reasonable effort to determine whether there has been a substantial decrease in pay based on all remuneration received by Wood from Menard. The Commissioner's representative must include Wood's holiday pay, overtime, and profit sharing in determining whether Wood had a decrease in compensation, and then make the determination whether the decrease, if any, was substantial under the *Sunstar* analysis and section 268.04, subdivision 25.

## DECISION

The Commissioner erred in finding that Wood quit his employment with good cause attributable to his employer. We reverse and remand with direction to the Commissioner to include Wood's holiday pay, overtime, and profit sharing in analyzing Wood's wages. The representative should then make a determination under the *Sunstar* analysis.

Reversed and remanded.