Wayne L. DACHEL, Relator,

v.

ORTHO MET, INC., Commissioner of Economic Security, Respondents.

No. C0–94–2096.

Court of Appeals of Minnesota.

Feb. 28, 1995.

Wayne L. Dachel, pro se.

Kent E. Todd, St. Paul, for Commissioner of Economic Security.

Considered and decided by CRIPPEN, P.J., and PETERSON and MANSUR,* JJ.

## OPINION

CRIPPEN, Judge.

Relator Wayne Dachel challenges the Commissioner's decision that he quit his job without good cause and was thus disqualified from receiving unemployment compensation benefits.[1] We affirm.

## FACTS

Relator was a five year employee of respondent Ortho Met, Inc., where he was ulti-

mately promoted to the position of end process inspector, with a wage of $10.67 per hour. His latest position required precision and attention to detail. Based on its dissatisfaction with the quality of relator's work, the employer told relator that he would be demoted to a production line position that paid $9.60 per hour. After this demotion, relator would also have fewer opportunities for overtime work, which had involved earnings of about $3,000 or more in each of the last three years.

Relator refused to accept his demotion, citing the reduction in wages, responsibilities, and overtime. His subsequent application for unemployment compensation benefits was denied, based on an administrative decision that he had quit his job without good cause attributable to his employer.

Before a hearing referee, the employer's human resources administrator testified that relator had received an oral warning in February and should have been aware of his performance problem. Other evidence indicated that on the day before relator quit, the employer completed a job evaluation indicating that his performance was unsatisfactory.

## ANALYSIS

An employee who voluntarily quits a job without good cause attributable to the employer is disqualified from receiving unemployment compensation benefits. Minn. Stat. § 268.09, subd. 1(a) (1992). The issue of good cause to quit is a question of law that "is not binding on this court if it does not have reasonable support in the findings." *Zepp v. Arthur Treacher Fish & Chips, Inc.*, 272 N.W.2d 262, 263 (Minn.1978). An employee has the burden of proving good cause to quit. *See Marz v. Department of Employment Serv.*, 256 N.W.2d 287, 289 (Minn.1977).

"Good cause" to quit has been defined as a reason that is "real, not imaginary, substantial not trifling, and reasonable, not whimsical; there must be some compulsion

---

* Retired judge of the district court, serving as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. The 1994 Minnesota Legislature changed the name of benefits paid under the program to

"reemployment insurance" benefits. Minn. Laws, Ch. 488, §§ 1, 8, eff. August 1, 1994. As the incidents involved in this claim occurred prior to August 1, 1994, we continue to use the term "unemployment compensation."

produced by extraneous and necessitous circumstances." *Ferguson v. Department of Employment Serv.*, 311 Minn. 34, 44, n. 5, 247 N.W.2d 895, 900, n. 5 (1976). For determining good cause, this standard is "reasonableness as applied to the average man or woman, and not to the supersensitive." *Id.*

A substantial reduction in wages may provide an employee with good cause to quit. *Scott v. The Photo Ctr., Inc.*, 306 Minn. 535, 536, 235 N.W.2d 616, 617 (1975). In *Sunstar Foods, Inc. v. Uhlendorf*, 310 N.W.2d 80 (Minn.1981), the supreme court affirmed a determination that a reduction in wages of 21–26 percent was unreasonable, justifying the payment of unemployment compensation benefits. The court stated:

> Other courts have found a decrease in wages of about 20–25 percent a good cause for separation from employment. When other courts have found no good cause for employment separation, the decrease in wages was less than 15 percent.

*Id.* at 84 (citations omitted).

In the present case, the Commissioner's representative concluded that the proposed decrease in relator's wages, $1.07 per hour, was not substantial. This conclusion conforms to the *Sunstar Foods* analysis; the reduction of approximately 10 percent was not unreasonable or substantial, justifying the payment of unemployment compensation benefits. And relator failed to meet his burden to prove that a loss of overtime would have contributed to a significant change in his wages. Moreover, relator was not promised a specific amount of overtime when he was hired. *See Moore v. Allied Aviation Fueling Co.*, 385 N.W.2d 41, 46 (Minn.App. 1986) (where overtime is not promised, the potential elimination of overtime did not constitute substantial change in employment).

An employee may also have good cause to quit if the employer changes the employee's job to one that requires substantially less skill. *See Marty v. Digital Equip. Corp.*, 345 N.W.2d 773, 775 (Minn.1984) (demotion to an inferior position with more limited opportunities for advancement and pay); *Holbrook v. Minnesota Museum of Art*, 405 N.W.2d 537, 539 (Minn.App.1987), *pet. for rev. denied* (Minn. July 15, 1987) (reassignment of assistant curator to a substantially different job involving clerical duties; good cause even though employee had originally done primarily clerical work before being promoted to assistant curator).

The Commissioner's representative concluded that relator's new position "was certainly less advantageous," but that he failed to show "it was so substantially different" that he had good cause to quit. And the representative made this additional finding: "The employer's decision was precipitated because of the claimant's own problems in performing (his prior job) satisfactorily." Even if the change of jobs was substantial, we conclude that (1) the record includes adequate evidence to sustain the Commissioner's finding that the demotion was prompted by relator's prior failure to perform satisfactorily, and (2) we must affirm the Commissioner's judgment that relator failed to show good cause to quit where his demotion was justified because of prior job performance deficiencies.

Minnesota appellate courts have held that the legitimacy of the employee's reassignment is not relevant; an employee may have good cause to quit even if the employer did not act unreasonably or unfairly in making a substantial change. *Holbrook*, 405 N.W.2d at 540. *See also Hanson v. I.D.S. Properties Mgmt. Co.*, 308 Minn. 422, 425, n. 1, 242 N.W.2d 833, 835 n. 1 (Minn.1976) (citing *Fannon v. Federal Cartridge Corp.*, 219 Minn. 306, 18 N.W.2d 249 (1945)) (negligence or wrongful conduct by the employer not necessary to support a claim of good cause to quit); *Neubert v. St. Mary's Hosp. & Nursing Ctr.*, 365 N.W.2d 780, 782 (Minn.App. 1985) (no requirement to show that employer acted wrongfully).

But this court recently recognized a distinction to this rule in circumstances where an employer demoted an employee as a disciplinary measure, instead of firing the employee for misconduct. *Goodwin v. BPS Guard Serv., Inc.* 524 N.W.2d 28 (Minn.App. 1994). The *Goodwin* court concluded:

> When an employer discharges an employee for misconduct, the employee is disquali-

fied from receiving reemployment insurance benefits. We think that it is consistent with the statutory framework to extend that analysis to hold that in situations in which an employer demotes an employee for misconduct warranting discharge, an employee who leaves employment should be disqualified from receiving benefits.

*Id.* at 29 (citation omitted).

The Commissioner did not conclude that relator committed misconduct. The definition of "misconduct" specifically excludes "mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances." *Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 375, 204 N.W.2d 644, 646 (1973) (quoting *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259, 296 N.W. 636, 640 (1941)). We must determine if the Commissioner erred by concluding that relator failed to show good cause to quit when his demotion was prompted by unsatisfactory performance of his job.

Unemployment compensation benefits are intended to benefit those persons who are "unemployed through no fault of their own." Minn.Stat. § 268.03 (1992). Although relator's inadequate job performance justified his demotion, he chose to become unemployed. The average, reasonable person, when faced with a similar choice, would have chosen to remain employed. *See Ferguson*, 311 Minn. at 44, n. 5, 247 N.W.2d at 900, n. 5 (citing reasonable person standard).

### DECISION

The Commissioner's representative did not err by concluding that relator did not have good cause to quit his job when he was demoted due to inadequate job performance.

**Affirmed.**