Corey P. COOK, Respondent,

v.

PLAYWORKS, Relator,

Commissioner of Economic
Security, Respondent.

No. C8–95–1207.

Court of Appeals of Minnesota.

Jan. 2, 1996.

Corey P. Cook, Shakopee, Pro Se.

Richard A. Duncan, Elizabeth Mary Hendricks–Schmiesing, Faegre & Benson, Minneapolis, for relator.

Kent E. Todd, Department of Economic Sec., St. Paul, for respondent.

Considered and decided by CRIPPEN, P.J., and KALITOWSKI and DAVIES, JJ.

## OPINION

CRIPPEN, Judge.

The Commissioner's representative found that respondent Corey Cook quit his job for good cause attributable to relator Playworks, his employer, thus qualifying respondent for reemployment compensation benefits pursuant to Minn.Stat. § 268.09 (1994). Relator employer contends that this finding erroneously disregards evidence and findings that the respondent, who quit due to a demotion and an accompanying pay cut, was given the new job assignment because of his inability to adequately perform in his previous position. We reverse and remand, concluding that the Commissioner's representative applied an unduly narrow standard to decide the question of good cause.

## FACTS

Respondent worked full-time for relator, a large childcare and family entertainment center, from September 6, 1994, through December 30, 1994, when he voluntarily quit his employment.

Relator originally hired respondent as an entertainment manager at a yearly salary of $27,040. Approximately two weeks after his

hiring, respondent was demoted to the position of entertainment coordinator, with a yearly salary of $24,576, because of inadequate job performance. As entertainment coordinator, respondent again failed to complete many of his assigned job duties. Respondent was counseled on various occasions concerning his deficient job performance; he expressed a desire to improve his work and during the latter portion of his employment enrolled in several training courses at the suggestion of relator. Respondent's job performance improved in some areas but remained deficient in others. Relator concluded that respondent was not capable of performing a management position because of his lack of skills and motivation.

Relator then advised respondent that he would be demoted to the position of assistant teacher at a yearly salary of $17,304. When respondent expressed concern about the lower pay, relator advised respondent that he could possibly return to the position of entertainment coordinator if he enrolled in sufficient education courses and improved his job performance. Respondent was also advised that he could obtain a job as a lead teacher by earning several additional educational credits. On December 30, 1994, respondent quit.

Respondent sought reemployment insurance benefits from the Minnesota Department of Economic Security. Reversing a department judge after review of the record, the Commissioner's representative held that respondent was not disqualified from receiving reemployment insurance benefits, finding that respondent voluntarily discontinued employment with good cause attributable to relator because of substantial reductions in pay.

## ISSUE

Where an employee is demoted based on a skills assessment found to be credible, is the employee's choice to quit reasonable because

of a substantial reduction in the employee's pay?

## ANALYSIS

The question of whether an employee voluntarily terminated employment with good cause attributable to an employer is a question of law that may be independently reviewed. *Wood v. Menard, Inc.*, 490 N.W.2d 441, 443 (Minn.App.1992). Similarly, whether the Commissioner's findings support a determination of misconduct is a question of law subject to de novo review. *Cherry v. American Nat'l. Ins.*, 426 N.W.2d 475, 477 (Minn.App.1988).

The reemployment insurance system is intended to benefit individuals who become unemployed through "no fault of their own." Minn.Stat. § 268.03 (1994). Reemployment insurance statutes are remedial and must be interpreted liberally in favor of awarding benefits. *Smith v. Employers' Overload Co.*, 314 N.W.2d 220, 221–22 (Minn.1981). A claimant is disqualified for reemployment insurance benefits if the claimant voluntarily terminates employment without good cause attributable to the employer or if the claimant is discharged for misconduct. Minn.Stat. § 268.09, subd. 1(a), (b) (1994). The parties agree that respondent's termination from relator was voluntary.

"Good cause" to quit has been defined as a reason that is "real, not imaginary, substantial not trifling, and reasonable, not whimsical; there must be some compulsion produced by extraneous and necessitous circumstances." *Ferguson v. Department of Employment Serv.*, 311 Minn. 34, 44 n. 5, 247 N.W.2d 895, 900 n. 5 (1976). The standard is "reasonableness as applied to the average man or woman, and not to the supersensitive * * *." *Id.*

A substantial reduction in wages may provide an employee with good cause to quit.[1] *Scott v. Photo Ctr., Inc.*, 306 Minn.

---

1. Further, an employee may have good cause to quit if the employer demotes the employee to a position that requires substantially less skill. *See Marty v. Digital Equip. Corp.*, 345 N.W.2d 773, 775 (Minn.1984) (demotion to inferior position with limited opportunities for advancement and

pay due to employee's violation of personnel policy regarding romantic relationships constituted good cause for quitting); *Holbrook v. Minnesota Museum of Art*, 405 N.W.2d 537, 539 (Minn.App.1987), *review denied* (Minn. July 15, 1987) (reassignment of assistant curator to sub-

535, 536, 235 N.W.2d 616, 617 (1975) (25 percent reduction in wages resulting from switch to commission from fixed salary established good cause for quitting); *McBride v. LeVasseur,* 341 N.W.2d 299, 300 (Minn.App. 1983) (30 percent reduction in pay resulting from change to hourly pay rate from monthly salary established good cause for quitting). In *Sunstar Foods, Inc. v. Uhlendorf,* the Minnesota Supreme Court affirmed a determination that a unilateral reduction in wages of 21–26 percent was unreasonable, justifying the payment of unemployment compensation benefits to striking meat packing plant employees. *Sunstar Foods,* 310 N.W.2d 80, 85 (Minn.1981). These cases support the "general rule that a substantial pay reduction gives an employee good cause for quitting." *Scott,* 306 Minn. at 536, 235 N.W.2d at 617.

■ The preceding authorities deal with an employer's unilateral pay cut, not with a demotion and an accompanying salary reduction for unsatisfactory job performance. In determining whether a voluntary termination is for good cause, the relative reasonableness of the employer is not relevant. *Holbrook v. Minnesota Museum of Art,* 405 N.W.2d 537, 540 (Minn.App.1987). But the employee may not have good cause to refuse a justifiable demotion. This court discussed the latter situation in *Dachel v. Ortho Met, Inc.,* which involved an employee who incurred a pay cut of approximately 10 percent because of a demotion based on the employer's dissatisfaction with the quality of the employee's work. *Dachel,* 528 N.W.2d 268, 270–71 (Minn.App.1995). We did not find the employee's pay cut substantial enough under *Sunstar Foods* to justify the payment of reemployment compensation. *Id.* at 270. But we also held that an employee lacks good cause to quit when "the average, reasonable person, when faced with a similar choice, would have chosen to remain employed." *Id.* at 271 (citing *Ferguson,* 311 Minn. at 44, n. 5,

247 N.W.2d at 900, n. 5). In the immediate case, unlike *Dachel,* the Commissioner's representative found good cause because respondent's pay was reduced from a yearly salary of $27,040 to a yearly salary of $17,304 in four months, a 36 percent decrease and a reduction greater than the 21–26 percent standard set in *Sunstar Foods. Sunstar Foods,* 310 N.W.2d at 84. Nevertheless, because these changes were shown to be justified on the basis of the employee's skills, the case presents the issue of cause to quit that was addressed in *Dachel.*

■ Relator calls for an even more restrictive approach, a determination that it is necessarily unreasonable and unjustified to quit employment where the employer has made a demotion based on an honest assessment of a person's job skills. Relator defends its position by pointing to undisputed facts that it showed unusual restraint in protecting respondent's job and attempting to place him in appropriate positions. We conclude that neither *Sunstar Foods* nor *Dachel* provides a bright line rule that governs a case of this kind. A severe decrease in wages may not justify a choice to quit when the employer has made a demotion after honestly assessing an employee's skills, but it does not follow that an employee's choice to quit is unreasonable in every case of this kind.

The Commissioner must determine the reasonableness of an employee's action considering all relevant circumstances which include loss of wages, the extent of the change of job duties, the reasonable career expectancies of the employee because of tenure with this or other employers, and the employee's remaining chances for advancement after the demotion.[2]

■ Finally, we note that a rigid concern for causative factors attributable to an employee, independent of a broader assess-

---

stantially different job involving clerical duties because of funding limitations established good cause for quitting). We acknowledge that a change in job circumstances may be good cause for quitting in some cases; however, the circumstances in this instance are distinct from those cited above because the employee here was demoted for inadequate job performance.

**2.** The Commissioner argues that the reasonableness of an employer's position should not determine the good cause of the employee in choosing to quit. That proposition, however, does not extend to the unique problem of an employer's assessment of an employee's skills, the subject matter of *Dachel* and this case.

ment of an employee's cause for quitting, is only appropriate where an employee's behavior rises to the level of misconduct. *See Goodwin v. BPS Guard Services, Inc.*, 524 N.W.2d 28, 29 (Minn.App.1994) (holding an employee quits employment without good cause attributable to the employer when the employer demotes the employee instead of firing the employee for misconduct). The issue is not so limited in this case, because we concur with the Commissioner's representative's finding that respondent was not demoted for misconduct.[3]

## DECISION

Where respondent Cook experienced a demotion and accompanying pay cut due to inadequate job performance, the Commissioner's representative erred by concluding that respondent had good cause to quit without considering other circumstances bearing on respondent's demotion and pay decrease, such as his reasonable career expectancies and his remaining opportunities for advancement. We remand for a redetermination of the case consistent with the standard announced in this opinion.

**Reversed and remanded.**

DAVIES, Judge, (dissenting).

I respectfully dissent. Respondent Cook was demoted and his salary was reduced, in two steps, from $27,040 to $17,304, *a reduction of 36 percent.* A demotion of this magnitude should in almost all cases be treated, as a matter of law, as justification for a voluntary quit, and the employee ought not be disqualified from reemployment benefits. Any other result opens the door to employer conduct—demotion, rather than discharge—that would make administration of the reemployment system impossibly difficult.

I agree that Cook may have been ill-advised in leaving a position that we might think matched his abilities, especially when

the employer appears to have treated him sympathetically throughout the employment. Nonetheless, I am unwilling to second-guess Cook—and the commissioner—to arrive at that conclusion.

After a 36 percent reduction in pay, the voluntary quit here should be held as a matter of law to have been with good cause attributable to the employer. To rule otherwise requires the department to make expensive inquiries and subtle judgments beyond its capacity and resources—and certainly beyond the capacity of this court.

---

3. The Commissioner's representative cited evidence that respondent's demotions and wage reductions were a result of poor work performance and lack of skill rather than willful, intentional misconduct. The definition of "misconduct" specifically excludes "mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances * * *." *Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 375, 204 N.W.2d 644, 646 (1973) (quoting *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259, 296 N.W. 636, 640 (1941)).