*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0054**

Wendy Bronstad,
Relator,

vs.

The House of Hope, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed September 22, 2014
Affirmed
Reilly, Judge**

Department of Employment and Economic Development
File No. 31647563-3

Wendy A. Bronstad, Janesville, Minnesota (pro se relator)

The House of Hope, Inc., Mankato, Minnesota (respondent)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent Department of Employment and Economic Development)

Considered and decided by Peterson, Presiding Judge; Reilly, Judge; and Reyes, Judge.

UNPUBLISHED OPINION

**REILLY**, Judge

Relator Wendy Bronstad applied for unemployment benefits, but the department of employment and economic development determined that she is ineligible because she quit her employment without a good reason caused by her employer. Bronstad filed an administrative appeal, and the unemployment-law judge (ULJ) upheld the ineligibility determination and affirmed this decision after Bronstad requested reconsideration. We affirm.

## FACTS

Respondent House of Hope, Inc. employed Bronstad as a full-time client manager in its chemical-dependency treatment program from October 20, 2006, to September 23, 2013. Bronstad typically worked Monday through Friday, 8:30 a.m. to 4:30 p.m.

On September 23, Bronstad met with Deanna Staples, a counselor supervisor at House of Hope, about a medication error. Staples presented Bronstad with a letter and told Bronstad that House of Hope was removing her from her supervisory position in the men's program and transferring her to a nonsupervisory position in the women's program. She also asked Bronstad to read and sign a form detailing the medication error. When Bronstad learned of this transfer, she declined the new position and refused to sign the form. After this refusal, Staples told Bronstad to turn in the company keys and credit card.

Staples testified that Bronstad's demotion was due to reprimands, client complaints, and medication errors. Staples stated that Bronstad "was having a lot more

2

medication errors than our other client managers and we needed to try something else. We wanted to keep her on staff and this was the other option." Staples stated that she wanted to transfer Bronstad to the women's house because the women's house had fewer clients and she thought it would be "less stress" for Bronstad and more beneficial for the program. When asked what Bronstad's response was when informed of her transfer, Staples stated:

> I actually . . . didn't even tell her she was demoted. I asked her to read the sheet because she was standing up by my desk. She didn't even sit down. And when she was reading it, she read half of it, it seemed like, and she threw it on my desk and said, I'm not doing this, I'm done. . . . And she said she, she did say as I put in quotations in my note, she did say quitting and was out of here.

The director of House of Hope testified that House of Hope had no intention of firing Bronstad and that she would still work full-time hours at the same pay rate at her new position. The new position at the women's house, however, would require Bronstad to work the evening shift and every other weekend. Staples stated that she did not think the switch to evening hours would be an issue because Bronstad had worked overnights in the past.

Bronstad disputed the events of September 23. Bronstad claimed that she never said she quit. Rather, Bronstad testified, "I said that I wouldn't sign the reprimand and I wouldn't step down from my position." Bronstad claimed that she refused the demotion because she did not commit the number of medication errors alleged. Bronstad also testified that she did not think she deserved to be demoted because she had not done "anything drastic" that would warrant demotion.

After separating from House of Hope, Bronstad sought unemployment benefits and was found ineligible. Bronstad appealed this determination. A ULJ conducted a de novo hearing and determined that the circumstances that caused Bronstad to quit would not compel the average, reasonable worker to quit. In his findings of fact, the ULJ found that Bronstad told her supervisor that she would not sign the written statement and that she would not accept the demotion. He further found that after Bronstad "refus[ed] this offer of employment in the women's house, Bronstad was instructed to turn in her keys and other company equipment." The ULJ found that the "evidence shows that there was continuing employment available to Bronstad as a client manager in the women's house." He reasoned that Bronstad did not have a good reason to quit.

Bronstad requested reconsideration, arguing that her pay rate would in fact decrease and disputing the number of medication errors in her record. The ULJ affirmed his decision, stating that Bronstad testified that there was "no mention of a pay change and the supervisor testified that the pay rate would not have changed." Thus, the ULJ found that the evidence showed that there would not be a pay reduction if she had accepted her new position.

Bronstad appeals the ULJ's decision by writ of certiorari.

## DECISION

This court reviews a ULJ's decision denying benefits to determine whether the findings, inferences, conclusions, or decision are affected by an error of law, are unsupported by substantial evidence in view of the entire record, or are arbitrary or

capricious. Minn. Stat. § 268.105, subd. 7(d) (2012).[1] The ULJ's factual findings are viewed in the light most favorable to the decision being reviewed, and this court defers to the ULJ's credibility determinations. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006).

Bronstad first argues that she did not quit. An applicant who quits employment is ineligible for unemployment benefits unless a statutory exception to ineligibility applies. Minn. Stat. § 268.095, subd. 1 (2012). The relevant statute defines both "quit" and "discharge." A quit "occurs when the decision to end the employment was, at the time the employment ended, the employee's." 2014 Minn. Laws ch. 251, art. 2, § 14 (to be codified at Minn. Stat. § 268.095, subd. 2(a) (2014)). A discharge "occurs when any words or actions by an employer would lead a reasonable employee to believe that the employer will no longer allow the employee to work for the employer in any capacity." 2014 Minn. Laws ch. 275, art. 1, § 87 (to be codified at Minn. Stat. § 268.095, subd. 5(a) (2014)). Whether an employee voluntarily quit or was fired is a question of fact, subject to this court's deference. *Stassen v. Lone Mountain Truck Leasing, LLC*, 814 N.W.2d 25, 31 (Minn. App. 2012).

The ULJ found that the evidence showed that there was continuing employment available to Bronstad in the women's program at the same pay rate and concluded that Bronstad made the decision to quit her employment with House of Hope. The demotion letter clearly stated that Bronstad was "being switched to the women's house" so that she

---

[1] Minn. Stat. § 268.105, subd. 7, was amended effective August 1, 2014. The amendment did not affect subdivision 7(d). 2014 Minn. Laws ch. 271, art. 1, § 1.

could "focus on [her] client manager position and all the responsibilities it entails." The only indication by House of Hope that it would no longer employ Bronstad was when Staples asked Bronstad to return her keys and employer property after she refused to accept the reprimand and demotion. The continuing offer of employment from House of Hope along with Bronstad and Staples's testimony support the ULJ's finding that Bronstad quit. *See Skarhus*, 721 N.W.2d at 344 ("[W]e will not disturb the ULJ's factual findings when the evidence substantially sustains them.").

Bronstad next argues that she quit for a good reason and thus the ULJ mistakenly concluded that she quit without good cause attributable to her employer. An employee who quits her employment is ineligible for unemployment benefits unless a statutory exception applies. Minn. Stat. § 268.095, subd. 1. One exception to ineligibility is when an employee quits for "a good reason caused by the employer." *Id.*, subd. 1(1). The "good cause" exception applies only when the reason for quitting (1) "is directly related to the employment and for which the employer is responsible"; (2) "is adverse to the [employee]"; and (3) "would compel an average, reasonable [employee] to quit and become unemployed . . . ." *Id.*, subd. 3(a). This analysis must be applied to the specific facts of each case. *Id.*, subd. 3(b).

The reason why an individual quits employment is a fact question for the ULJ to determine. *See Beyer v. Heavy Duty Air, Inc.*, 393 N.W.2d 380, 382 (Minn. App. 1986) (reviewing determination for the reason the employee quit as a factual question). The ULJ found that Bronstad quit because she would not accept employment in the women's program. At the evidentiary hearing, Bronstad testified:

6

> [ULJ]: You mentioned in your written exhibits that you didn't want to take the night position because of family matters. Is that accurate?
> [Bronstad]: I didn't, I don't want to work nights. I want to work days. I'm not a night person, I'm a day person.
> [ULJ]: Okay.
> [Bronstad]: But that isn't the reason.
> [ULJ]: Is that because you have the four children at home?
> [Bronstad]: I do have four children at home, but that had nothing to do with me refusing to take the demotion. I didn't feel I had a reason to be demoted.

The reason why Bronstad quit—demotion—is substantially supported by the evidence in the record.

Next, the ULJ concluded that "the circumstances which caused Bronstad to quit would not compel the average, reasonable worker to quit and become unemployed." Whether the reason the applicant quit qualifies as a good reason to quit caused by the employer is a legal question, which this court reviews de novo. *Peppi v. Phyllis Wheatley Cmty. Ctr.*, 614 N.W.2d 750, 752 (Minn. App. 2000). Substantial evidence must support the legal conclusion that an employee quit for a good reason. *Nichols v. Reliant Eng'g & Mfg., Inc.*, 720 N.W.2d 590, 594 (Minn. App. 2006).

An employee has good reason to quit caused by the employer when the employer alters the terms and conditions of employment in a material and adverse manner. *Rootes v. Wal-Mart Assocs., Inc.*, 669 N.W.2d 416, 418 (Minn. App. 2003). Here, Bronstad's brief asserts that a reasonable person would quit for "being demoted after having 6 years of great yearly reviews." Besides her demotion to a nonsupervisory position, Bronstad

7

cites to the change in job location, new clients, and her inability to carpool as factors influencing her decision to quit.

None of these reasons supports relator's assertion that these are good causes to become voluntarily unemployed.

We have held that good cause to quit did not exist when an employer demoted an employee to a nonsupervisory position when the employer was dissatisfied with the employee's job performance. *Heisler v. B. Dalton Bookseller*, 368 N.W.2d 314, 316 (Minn. App. 1985); *see Dachel v. Ortho Met, Inc.*, 528 N.W.2d 268, 270 (Minn. App. 1995) (holding an employee's demotion does not constitute good cause to quit if, based on adequate evidence in the record, the demotion resulted from inadequate job performance). Moreover, we have determined that a demotion coupled with a 36% reduction in salary was not a good cause to quit when the demotion was made after "honestly assessing an employee's skills." *Cook v. Playworks*, 541 N.W.2d 366, 369 (Minn. App. 1996). Additionally, transferring an employee to a night shift is not a good reason for an employee to quit. *Markert v. Nat'l Car Rental*, 349 N.W.2d 859, 861 (Minn. App. 1984). The employee is generally responsible for providing transportation absent evidence to the contrary. *Werner v. Med. Prof'ls LLC*, 782 N.W.2d 840, 842 (Minn. App. 2010). Thus, any transportation issues that may have resulted from the demotion and subsequent change in job location cannot be attributed to the House of Hope. *Id.*; *see* Minn. Stat. § 268.095, subd. 3(a)(1) (requiring good cause reason to be "directly related to the employment").

Because Bronstad's reason for quitting was due to a demotion based on unsatisfactory job performance, substantial evidence supports the ULJ's finding that the circumstances that caused her to quit would not cause an average, reasonable worker to quit. The ULJ did not err in upholding the determination of ineligibility.

**Affirmed.**