*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0647**

Michael Mudek,
Relator,

vs.

Redtail Management, Inc. – Billy's Bar & Grill at Breezy Point,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed February 17, 2015
Affirmed
Smith, Judge**

Department of Employment and Economic Development
File No. 31801520-5

Thomas H. Boyd, Winthrop & Weinstine, P.A., Minneapolis, Minnesota (for relator)

Redtail Management, Inc. – Billy's Bar & Grill at Breezy Point, Breezy Point, Minnesota (respondent)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

        Considered and decided by Smith, Presiding Judge; Schellhas, Judge; and Hooten, Judge.

UNPUBLISHED OPINION

**SMITH**, Judge

We affirm the determination of the unemployment law judge (ULJ) that relator is ineligible for unemployment benefits because the record substantially supports the ULJ's factual finding that relator quit without good reason caused by the employer.

**FACTS**

Relator Michael Mudek worked as a cook at Billy's Bar & Grill in Breezy Point from June 24, 2013 to October 15, 2013. Mudek was offered the position after asking the owner about seasonal work. Mudek wanted to work for the summer so that he would have money when he moved to Duluth in the fall. For most of the summer, Mudek averaged 30 hours per week; however, in the last weeks of his employment, Billy's scheduled him for only four hours per week.

While working at Billy's, Mudek lived at a nearby campground. The campground closed for the winter on October 14, 2013. The owner and Mudek previously agreed that Mudek would stop working approximately when the campground closed. Mudek's last day was October 15, and Mudek moved to Duluth four days later.

DEED initially determined that Mudek was eligible for benefits, and Billy's appealed. At an evidentiary hearing, the Billy's general manager testified that Mudek was not a seasonal employee and that he could have continued working at Billy's with a reduced schedule. Both the manager and a cook testified that Mudek quit Billy's because he was moving after the campground closed. Mudek testified that he was only working at Billy's seasonally and that he left because he and the owner had agreed that he would

be "legally laid off" on October 15, 2013. In support of this, he testified that his reduced hours demonstrated that there was no need for an extra cook after summer.

The ULJ determined that Mudek quit his employment to move, not because his hours were reduced. Because moving is not a good reason to quit caused by an employer, the ULJ concluded that Mudek is ineligible for unemployment benefits. Mudek requested reconsideration of the ULJ's decision, which was later affirmed.

## D E C I S I O N

We may affirm a ULJ's decision or remand the case for further proceedings. Minn. Stat. § 268.105, subd. 7(d) (2014). We may also reverse or modify a ULJ's decision if a relator's substantial rights have been prejudiced because the ULJ's findings, inferences, conclusion, or decision are made upon unlawful procedure, affected by an error of law, not based on substantial evidence in the record, or arbitrary or capricious. *Id.* We view the ULJ's factual findings in the light most favorable to the decision under review and defer to the ULJ's credibility determinations. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006).

The purpose of unemployment insurance is to assist those who are unemployed through no fault of their own. Minn. Stat. § 268.03, subd. 1 (2014). The Minnesota Unemployment Insurance Law "is remedial in nature and must be applied in favor of awarding benefits," and any provision precluding receipt of benefits "must be narrowly construed." Minn. Stat. § 268.031, subd. 2 (2014). There is no equitable denial or allowance of benefits. Minn. Stat. § 268.069, subd. 3 (2014).

Mudek argues that, because his employment was only seasonal and ended by mutual agreement on October 15, 2013, he did not quit. In addition, Mudek argues that his employer discharged him because there was no reasonable offer of continued employment after his hours were significantly reduced in the final weeks of his employment. In the alternative, Mudek argues that, even if he did quit, it was for good cause because his hours were reduced by over 85 percent, which constitutes a substantial change in the terms of his employment.

We first address whether there is substantial evidence in the record to support the ULJ's factual finding that Mudek quit. An employee who quits is ineligible for unemployment benefits unless he satisfies one of several enumerated exceptions. *See* Minn. Stat. § 268.095, subd. 1 (2014). A quit "occurs when the decision to end the employment was, at the time the employment ended, the employee's." *Id.*, subd. 2(a) (2014). A discharge "occurs when any words or actions by an employer would lead a reasonable employee to believe that the employer will no longer allow the employee to work for the employer in any capacity." *Id.*, subd. 5(a) (2014). Whether an employee quit or was discharged is a question of fact, subject to this court's deference. *Stassen v. Lone Mountain Truck Leasing, LLC*, 814 N.W.2d 25, 31 (Minn. App. 2012).

The ULJ found that Mudek quit because he requested a seasonal position and chose October 15 as his last day of employment. The ULJ's finding is supported by the record. The manager testified that, one month prior to quitting, Mudek said that his last day would be October 15 and that he was moving to Duluth. A cook also testified that Mudek told him that he was moving in October and that the staff was aware of this the

4

whole summer. Mudek testified that he requested seasonal employment when he approached the owner. He also testified that he planned to move at the end of the summer and knew that he wanted only seasonal employment before seeking the position. The record supports the ULJ's finding that, even if his scheduled hours had remained the same, the decision to end Mudek's employment on October 15 was Mudek's because he planned to move when the campground closed. The record supports the finding that Mudek could have continued working a reduced schedule, had he chosen to remain. Therefore, the ULJ did not err by determining that Mudek quit.

We next consider whether Mudek quit for a good reason caused by his employer. An employee who quits for "a good reason caused by the employer" remains eligible for unemployment benefits. Minn. Stat. § 268.095, subd. 1(1). A good cause for quitting (1) "is directly related to the employment and for which the employer is responsible," (2) "is adverse to the worker," and (3) "would compel an average, reasonable worker to quit." *Id.*, subd. 3 (2014). An employee's reason for quitting is a question of fact, subject to this court's deference. *See, e.g.*, *Beyer v. Heavy Duty Air, Inc.*, 393 N.W.2d 380, 382 (Minn. App. 1986) (reviewing determination for the reason the employee quit as a factual question). Whether a particular reason is good cause is a question of law, which we review de novo. *Rowan v. Dream It, Inc.*, 812 N.W.2d 879, 883 (Minn. App. 2012). Good cause exists only when there was an actual reason for terminating the employment. *Cf. Ferguson v. Dep't of Emp't Servs.*, 311 Minn. 34, 44, 247 N.W.2d 895, 900 (1976) (holding that good cause means a "substantial reason").

5

Mudek argues that he quit because his employer reduced his hours from an average of 30 per week to four per week in response to a seasonal decline in business. In contrast, the ULJ found that Mudek quit because his campground was closing and he planned to move. The ULJ's finding is supported by the record. Mudek testified that he planned to leave his employment after the campground shut down for the winter because he could no longer remain there and wanted to move. He requested only seasonal work in accordance with his plan to move in the fall. While reducing his hours by 85 percent may have qualified as good cause to quit, *see Wood v. Menard, Inc.*, 490 N.W.2d 441, 443 (Minn. App. 1992) ("Generally, a substantial pay reduction or an unreasonable change in terms of employment gives an employee good cause for quitting."), the ULJ found that the reduction in hours was not Mudek's actual reason for quitting. Mudek did not testify that he intended to continue working at Billy's if his hours remained at an average of 30 per week or that the reduction contributed to his decision to move. And this is not a case where Mudek had been expressly informed about an impending seasonal layoff. *See E.H. Schrupp & Assocs., Inc. v. Stansberry*, 412 N.W.2d 808, 810 (Minn. App. 1987) (distinguishing quitting when a layoff is anticipated from quitting when the employee was expressly informed of an impending layoff). To the contrary, he made it clear that he planned to leave in October because of his living arrangements. There is substantial support in the record for the ULJ's finding that Mudek quit to move and not because his hours were reduced.

We therefore conclude that the ULJ did not err because the ULJ's factual findings are substantially supported by the evidence.

**Affirmed.**